283 A.2d 673.

PAUL GOLDMAN, INC. *et al. vs.* ROBERT BURNS, *et al.*

NOVEMBER 16, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. This civil action to enjoin the award of a public contract for the purchase of 13 motor vehicles was heard by a justice of the Superior Court sitting without a jury and is now here on the plaintiffs' appeal from a judgment dismissing the action with prejudice. Two of the four plaintiffs are corporate automobile dealers. They carry on their business under the trade name "Paul Goldman Dodge," and we refer to it as "Goldman." At least one of the others is an individual taxpayer[1] of the City of Pawtucket. The defendants, the several members of the Pawtucket Purchasing Board, have been sued in their representative capacity.

The facts come to us in an unusual manner. Some are found in an agreed statement; others are taken from the transcript of the proceedings before the Superior Court. In August 1970, the purchasing board publicly invited the submission of written bids for the sale of 13 motor vehicles for the use of the police department. Goldman and Pierce Chevrolet, Inc. responded. On August 19, 1970, the board publicly opened the bids that had been received. The Goldman bid offered to provide 13 Dodge automobiles at $39,-450; Pierce, to furnish 13 Chevrolets for $39,976.98. Both bids were taken under advisement.

A week later the bids were considered by the board at an executive session. The chief of police attended by invitation. He recommended acceptance of the Pierce bid, even

---

[1] The plaintiffs' standing to maintain this action has not been challenged. Generally, however, the rule is that a taxpayer, acting in good faith and not to further the interest of a stranger to the record, may maintain an action to enjoin the officers of a municipality from abusing its powers by expending money without authority of law. *Place* v. *Providence,* 12 R. I. 1, 5 (1878). *See Vibberts* v. *Hart,* 85 R. I. 35, 125 A.2d 193 (1956).

though it was $526.98 higher than Goldman's, for the following reasons: (1) the police department's existing fleet of 33 vehicles, all of which were then Chevrolets, would be kept "uniform"; (2) the past performance of the vehicles in the fleet had been "most satisfactory"; (3) parts and services could be more easily obtained for Chevrolets than for Dodges; and (4) the "introduction of a second make vehicle into the fleet would require the stocking of additional parts at a cost that would be far in excess of the savings to the City should this different make be obtained." Relying upon these recommendations, the board accepted the Pierce bid, even though Goldman was the low-money bidder.

It should be noted at the outset that neither plaintiffs nor defendants contend that the opposing bidder was "irresponsible" in the sense that it could not perform, or that the opposing bid failed to satisfy the advertised specifications, or that those specifications could not be satisfied by any of several makes of motor vehicles. And plaintiffs do not suggest that the board acted dishonestly or capriciously; neither do they challenge the trial justice's findings that the board acted reasonably and within the parameters of good faith. Instead, they commenced these proceedings in the belief that the board lacks discretion and acts ministerially only, and that it is legally bound to award contracts to the lowest bidders. They asked that the Pierce contract be declared illegal and cancelled, and that the board be enjoined from taking any further action under the award and from making any payments to Pierce on account thereof. When relief was denied and their complaint dismissed with prejudice, plaintiffs appealed.

In support of their position, plaintiffs point to section 4-1004, of the City of Pawtucket Charter (1954) which governs the letting of public contracts in that City. It reads as follows:

"Sec. 4-1004. *Awarding bids to lowest responsible bidder; rejection of bids.*

It shall be the established policy of the purchasing agent and the purchasing board to award all contracts to the lowest responsible bidder, except where previous dealings with the lowest bidder shall warrant the rejection of his bid. Either the purchasing agent or the purchasing board shall have the right to reject all bids, and to order the obtaining of new bids."

Plaintiffs urge that the phrase "it shall be the established policy" imposes a binding obligation upon the board. Assuming, without deciding, that this is so, we must still consider the meaning of the term "lowest responsible bidder." Specifically, then, the question for decision is whether the purchasing authority was obliged to award the contract to the lower dollar-and-cents bidder, or whether, instead, it was free to take into consideration, not only the amounts bid, but the suitability of the vehicles to be supplied to their intended use and their adaptability to the purposes for which they were required.

While the authorities are divided on how to read provisions such as: "lowest responsible bidder," "lowest and best bidder," or "best responsible bidder," the majority, and in our judgment, the better, view favors a construction which permits the awarding authority to exercise a reasonable, good-faith discretion, and does not commit it unqualifiedly to the lowest bid. *Mitchell* v. *Walden Motor Co.,* 235 Ala. 34, 177 So. 151 (1937); *Hodgeman* v. *San Diego,* 53 Cal. App. 2d 610, 128 P.2d 412 (1942); *McNichols* v. *Denver,* 130 Col. 202, 274 P.2d 317 (1954); *Eggart* v. *Westmark,* 45 So.2d 505 (Fla. 1950); *Otter Tail Power Co.* v. *Elbow Lake,* 234 Minn. 419, 49 N.W.2d 197 (1951);

10 McQuillin, *Municipal Corporations* §29.73(a) at 430 (3d ed. 1966).[2]

Here the purchasing board honestly and in good faith accepted the police chief's recommendation that Chevrolets were better suited to his department's use than were Dodges, and it accepted the bid of a "responsible" bidder for a vehicle that fit the specifications even though the price submitted was slightly higher than that of the other bidder. In those circumstances, we will not interfere with the award absent a showing that the board acted corruptly or in bad faith, or so unreasonably or arbitrarily as to be guilty of a palpable abuse of discretion. *Gilbane Building Co.* v. *Board of Trustees of State Colleges,* 107 R. I. 295, 300, 267 A.2d 396, 399 (1970). That defendants may have been guilty of that kind of conduct in this case is not even hinted at, much less shown, and the complaint must therefore fall.

The plaintiffs' appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Philip M. Hak,* for plaintiffs.

*Gerald J. Pouliot,* Assistant City Solicitor, for defendants.

---

[2]Of the cases cited the one factually closest to our own is *Mitchell* v. *Walden Motor Co.,* 235 Ala. 34, 177 So. 151 (1937). There the invitation to bid for two 1½-ton trucks did not specify a particular make. The awarding authority preferred the higher-priced trucks over the others, and was willing to pay the difference, because in its judgment they would be more economical to operate and more durable. On appeal, its decision was approved.