H.V. COLLINS COMPANY

v.

Ronald TARRO, in His Capacity as Town Treasurer of the Town of Barrington, et al.

No. 97–75–Appeal.

Supreme Court of Rhode Island.

June 4, 1997.

Girard R. Visconti, Providence, for Plaintiff.

Lauren E. Jones, Sean O. Coffey, John T. Walsh Jr. Lawrence P. McCarthy, John F. Kelleher, Joseph V. Cavanagh, Jr., Karen A. Pelczarski, Douglas B. Neu, Staci L. Sawyer, James M. Green, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on the appeal of the defendants, Ronald Tarro in his capacity as town treasurer of the Town of Barrington (town), Ralph A. Malafronte (Malafronte) in his capacity as superintendent of schools of the town, Patrick A. Guida (Guida) in his capacity as chairperson of the Barrington High School Building Committee (building committee), H. Terri Adelman in her capacity as chairperson of the Barrington School Committee (school committee), H. Terri Adelman, Patrick A. Guida,

Patricia O'Connor, Pamela Fisher, and Martha Scavongelli in their capacities as members of the school committee, and the Gilbane Building Company (Gilbane). The defendants have appealed a declaratory judgment of the Superior Court, in which the trial justice declared that the award of a municipal contract by the school committee to Gilbane violated G.L.1956 § 45–55–5 and the Barrington Town Charter, section 16–2–9.

For the reasons stated below, we sustain the appeal and reverse the judgment of the Superior Court. A summary of the facts relevant to the issues raised in this appeal follows; additional facts are included in the discussion of the issues.

## Facts and Procedural History

In the spring of 1996, the school committee organized a building committee to plan a major renovation and expansion of the town's high school. On September 19, 1996, upon the recommendation of the building committee, the school committee voted to retain a construction manager for the project, and on October 7, 1996, a Request for Proposals (RFP) for Construction Management Services was issued. Four bidders attended a preproposal conference on October 11, 1996, and subsequently submitted bids in response to the RFP. The bids for construction management services were submitted by H.V. Collins Company (Collins) in the amount of $654,893, Dimeo Construction Company (Dimeo) for $671,950, Gilbane for $714,750, and O. Ahlborg for $850,000. The building committee interviewed the bidders, representatives of each of which made a presentation to the committee.

The building committee voted to recommend to the school committee that Gilbane be selected, and on December 19, 1996, the school committee awarded the contract to Gilbane, the third-lowest bidder. On the following day, Collins, the lowest bidder, commenced this action against the town. The Superior Court, on December 23, 1996, temporarily restrained the school committee from awarding the contract. The trial justice granted Gilbane's motion to intervene as a party defendant, and Dimeo, the second-lowest bidder, was allowed to intervene as a

party plaintiff. On January 2, 3, and 7, 1997, a consolidated hearing was held on both the preliminary injunction and the merits. At the commencement of trial, Collins moved to sever "from the hearing on the merits" count 3 of its complaint, alleging a violation by the school committee of the Open Meetings Act, G.L.1956 chapter 46 of title 42, noting that the Office of the Attorney General had filed a complaint alleging that same violation by the school committee. The motion to sever was granted without objection, and count 3 was later dismissed, without prejudice, by stipulation of the parties. Consequently, the open meetings violation count is not before us.

At trial, Collins agreed to the dissolution of the restraining order and sought only a declaratory judgment that Gilbane's bid was fatally defective and materially nonresponsive and that Collins, as the lowest competent and responsive bidder, should have been awarded the contract. Collins and Dimeo both alleged that the RFP and the action of the school committee in awarding Gilbane the contract violated chapter 55 of title 45 of the General Laws, entitled "Award of Municipal Contracts," and section 16–2–9 of the Barrington Town Charter (charter).

On January 16, 1997, the trial justice issued a declaratory judgment that (1) Collins was the lowest competent and responsible bidder with the lowest evaluated and responsive bid price; (2) Dimeo was the next lowest competent and responsible bidder with the next lowest evaluated and responsive bid price; (3) Gilbane's bid was not the lowest evaluated or responsive bid price; (4) Gilbane's bid was materially nonresponsive, fatally defective, and should have been rejected by the school committee; (5) the evaluation of bids by the school committee was subjective, unfair, and included matters outside the criteria in the RFP; (6) the school committee's conduct in evaluating the bids and awarding the contract to Gilbane violated § 45–55–5 and section 16–2–9 of the charter; (7) the school committee's conduct was so unreasonable and patently unfair as to constitute a "palpable abuse of discretion"; and (8) the school committee acted in bad faith when it considered Gilbane's suggestion for a "public relations and lobbying campaign" in

favor of the bond referendum as part of the "community relations" criterion of the RFP, without affording the other bidders the opportunity to respond to this suggestion.

On January 23, 1997, judgment was entered for plaintiff Collins, following which, defendants filed the instant appeal. On February 6, 1997, we granted defendants' motion to expedite their appeal, and this case was assigned for full briefing and oral argument.

### Award of the Contract

On appeal, the town and Gilbane argued that the trial justice erred as a matter of law in finding that the school committee had violated § 45–55–5 by awarding the contract to Gilbane. Section 45–55–5 provides in pertinent part:

> "**Competitive sealed bidding.**—(1) Contracts * * * shall be awarded by competitive bidding unless it is determined in writing that this method is not practicable.
> * * *
> (2) The invitation for bids shall state whether award shall be made on the basis of the lowest bid price or the lowest evaluated or responsive bid price. If the latter basis is used, the objective measurable criteria to be utilized shall be set forth in the invitation for bids, if available.
> * * *
> (5) The contract shall be awarded with reasonable promptness by written notice to the responsive and responsible bidder whose bid is either the lowest bid price, or lowest evaluated or responsive bid price."

The trial justice found, and the parties do not dispute, that the contract in this case was intended to be awarded to the responsive and responsible bidder whose bid was the "lowest *evaluated or lowest responsive bid price.*" Neither the school committee nor the trial justice found any of the bidders in this case to be "not responsible or not qualified to perform the work."

The trial justice further found that there was no evidence of "corruption or corrupt motivation behind the award of this contract." The trial justice did determine, however, that the school committee failed to award the contract to the bidder whose bid

was the lowest evaluated and responsive bid price. In her decision, the trial justice observed that when awards are made on the basis of the lowest evaluated bid price, "considerations other than price are relevant and necessary," and "the criteria upon which the evaluation is to be made must be objectively measurable and 'set forth in the invitation for bids,'" pursuant to § 45–55–5(2). The trial justice next found that the criteria adopted by the town were neither objective nor measurable and that the evaluation of the bids by the school committee was "subjective, unfair, and included matters outside the criteria of the bidding document." The trial justice also determined that Gilbane's bid was not responsive to the RFP.

The trial justice concluded that "the conduct of the School Committee, in its application and arbitrary interpretation of the selection criteria [was] so unreasonable and patently unfair as to amount to a palpable abuse of discretion" and that its heavy reliance on matters extraneous to its own proposal was so egregious as to amount to bad faith. The trial justice stated, "The plain fact is that Gilbane was clearly the favorite candidate and was selected in violation of state law in such an arbitrary, capricious, and patently unfair process as to be a palpable abuse of discretion, manifestly unfair and in bad faith."

In the case before us, the RFP set forth eight criteria on which the bids would be evaluated:

"(A) Demonstrated experience in the type of work required.

"(B) Record of firm in accomplishing work on other, similar projects in required time frame.

"(C) Quality of work performed previously by the firm for the Town of Barrington, if any.

"(D) Professional background, experience and expertise of the principals and potential Project Managers.

"(E) Recent experience showing accuracy of cost estimates.

"(F) Community relations, including evidence of sensitivity to citizen concerns.

"(G) Familiarity and experience with a construction management team approach. "(H) Basic fees to be charged for the various categories of services."

We have gleaned from the record that the building committee and the school committee carefully considered these criteria as each proposal was evaluated. The school committee did not find that any of the bidders was not qualified or did not meet the RFP criteria. At trial, the building committee maintained that its decision to recommend Gilbane to the school committee was derived from the following considerations: (1) Gilbane had worked as construction manager on twenty-six public school projects involving addition to or renovation of an occupied school in the previous five years, whereas none of the other bidders had worked on more than three such projects in that time, thereby making Gilbane "by far the most experienced candidate in this type of work"; (2) Gilbane had worked successfully on several projects for the town, whereas neither Collins nor Dimeo had performed any work for the town; (3) Gilbane proposed using more personnel, each of whom had "impressive credentials" and more extensive experience in school construction and renovation than the proposed personnel of the other bidders; (4) Gilbane presented the most detailed community-relations program, including a comprehensive plan for attaining referendum approval for the project, whereas Collins and Dimeo merely offered assurances that they would be "[w]illing to assist" with community relations; and (5) Gilbane was more experienced with a construction-management team approach than the other bidders. Our review of the record also disclosed that, following the recommendation of the building committee, the school committee independently considered the proposals in respect to each of the eight criteria, before voting to award the contract to Gilbane.

## Standard of Review

It is well settled that, in reviewing the bidding process, the Judiciary will interfere with the award of a state or municipal contract only in the event that the awarding authority has "acted corruptly or in bad faith, or so unreasonably or so arbitrarily as to be guilty of a palpable abuse of discretion." *Paul Goldman, Inc. v. Burns,* 109 R.I. 236, 240, 283 A.2d 673, 676 (1971); *Gilbane Building Co. v. Board of Trustees of State Colleges,* 107 R.I. 295, 300, 267 A.2d 396, 399 (1970). This standard, originally set forth prior to the enactment of chapter 55 of title 45 of the General Laws, was reaffirmed in the later holdings of this Court. In *Nelson's Bus, Inc. v. Town of Burrillville,* 639 A.2d 63, 64 (R.I.1994), we held that "[n]othing contained in G.L.1956 (1991 Reenactment) chapter 55 of title 45 * * * changes the standard of review set forth in our [earlier] cases." In *Truk Away of Rhode Island, Inc. v. Macera Bros. of Cranston, Inc.,* 643 A.2d 811 (R.I.1994), this Court noted that a similar standard prevails "in most jurisdictions under statutes that require that a contract for public improvements be given to the 'lowest responsible bidder.'" *Id.* at 815 (quoting *Gilbane,* 107 R.I. at 300, 267 A.2d at 399). Moreover, in *Truk Away* this Court reaffirmed these holdings with a ringing admonition that "those whose duty it is to contract for the construction of a public improvement should [not] be placed in a legalistic straitjacket," and in particular "when officials in charge of awarding a public work's contract have acted fairly and honestly with reasonable exercise of a sound discretion, their actions shall not be interfered with by the courts." *Id.* (quoting *Gilbane,* 107 R.I. at 302, 267 A.2d at 400). *See also Peter Hajian Associates v. Board of Library Trustees/Building Committee, Town of Cumberland,* 685 A.2d 283 (R.I.1996) (no error when town awarded contract to a higher bidder in a competitive evaluated bid process). On appeal, the findings of a trial justice sitting without a jury will not be disturbed unless the trial justice has overlooked or misconceived material evidence or was otherwise clearly wrong. *Picard v. Barry Pontiac-Buick, Inc.,* 654 A.2d 690, 693 (R.I.1995).

On the basis of the record before this Court, we conclude that the RFP presented with reasonable specificity the objective and measurable criteria that would be used in evaluating the bids and that each proposal was evaluated on the basis of these criteria. We are not persuaded by plaintiffs' assertion

that all criteria in a RFP must be quantifiably reducible or digitized to a dollar amount. Rather, we have determined that there is simply no basis here for abandoning or altering our earlier observation that

> "[w]hile the authorities are divided on how to read provisions such as: 'lowest responsible bidder,' 'lowest and best bidder,' or 'best responsible bidder,' the majority, and in our judgment, the better, view favors a construction which permits the awarding authority to exercise a reasonable, good-faith discretion, and does not commit it unqualifiedly to the lowest bid." *Paul Goldman, Inc.*, 109 R.I. at 239, 283 A.2d at 675.

 We are of the opinion that § 45–55–5 does not preclude an awarding authority from taking into account factors beyond price when selecting the "best" or "superior" bidder. The awarding authority is not necessarily required to award the contract to the responsible bidder who minimally satisfies the criteria in the RFP and submits the lowest bid price. In this case, the building committee and the school committee considered carefully such factors as the relative experience, expertise, qualifications, and quality of work of the bidders and awarded the contract to the bidder that they considered to be the "superior" bidder. We are of the opinion that these criteria were sufficiently objective, measurable, and enunciated in the RFP. Therefore, we conclude that the requirements of § 45–55–5(2) for a competitive evaluated bidding process were met in this case. Moreover, we have never held that an awarding authority is required to disqualify lower bidders before awarding the contract to the company it considered the "better" bidder, *see Goldman*, 109 R.I. at 238–40, 283 A.2d at 675–76, nor are we persuaded that the current statute requires such a result. We also note that our decision today aids the purpose of chapter 45 of title 55 in safeguarding public funds by recognizing that a company that ranks higher on the criteria specified in an RFP, even if not the lowest bidder, may save a municipality money over the course of the project as a result of its experience and *savoir-faire*.

**Barrington Town Charter**

 On appeal, defendants also contended that the trial justice misconstrued the charter and erred in finding that the school committee had violated section 16–2–9 of the charter by awarding the contract to Gilbane. The charter provides in pertinent part as follows:

"**16–2–9 PURCHASING PRACTICES.** The Town Manager, and in the case of the School Department the Superintendent of Schools, shall be responsible for the purchase and sale of all materials, supplies, equipment and public improvements in accordance with the following requirements:

\* \* \*

b. In the case of all purchases or sales in excess of two thousand five hundred dollars, the purchase or sale shall be approved by the Council, or the School Committee in the case of the School Department. Sealed competitive bids shall be obtained, except for professional services, or except when the Council or the School Committee shall determine by a majority vote that the public interest will best be served by joint purchase or sale with another unit of government or purchase from or sale to another unit of government or when the existing circumstances indicates [*sic* ] competitive bidding is not possible or not in the public's best interest. [**Amended 11–21–94**]

\* \* \*

d. *Purchases shall be made from the lowest competent bidder meeting specifications unless the Council or the School Committee shall determine that the public interest will be better served accepting a higher bid.* In such case, the Council or the School Committee shall set forth its reasons therefor. The acceptance of any bid shall be conclusive upon all bidding parties that the same was accepted in accordance with the provisions of this section." (Emphasis added.)

It is undisputed that in this case the contract exceeded $2,500 and that no evidence was presented at trial suggesting that the school committee had determined that competitive bidding was not possible or not in the

public's best interest. Accordingly, the trial justice found, and the town agreed, that the award of the construction-management contract must comply with section 16–2–9d of the charter.[1]

The charter clearly allows municipal contracts to be awarded to other than the lowest bidder when the awarding authority deems it in the public interest to do so. In 1983, the town amended section 16–2–9 by adding the school committee as an entity subject to the purchasing provisions.[2] The charter thus authorizes the school committee to accept a higher bid if it has determined that in so doing, the public interest would best be served. It is also clear that the school committee, in accordance with the charter, was required to set forth its reasons for accepting a higher bid. Our review of the record has revealed that the school committee considered explicitly whether the public interest would be served by selecting a higher bidder. At the December 19, 1996 meeting of the school committee, a committee member made the following resolution:

"It is in the public interest to award the Construction Manager contract on the basis of the eight criteria set forth in the [RFP], only one of which is the bid price. Specifically, the School Committee is giving great weight to Experience in high school construction, experience and quality of work previously performed for the Barrington School Department, professional background and experience of proposal project staff, experience in providing accurate cost estimates, proposed approach to assisting the School Committee in presenting and gaining passage of the bond referendum for this project, and experience as Construction Managers are as important as price in a project of this magnitude involving major construction during the school year."

The trial justice found that "[t]his analysis involves the very same subjective and manipulative interpretation of selection criteria which were not included in the RFP," and that "[a]pplying the same standard of conduct as *Goldman, Gilbane,* and *Nelson's Bus,* the Court finds this award is so arbitrary as to amount to a palpable abuse of discretion." The trial justice concluded that the school committee thus had acted against the public interest in violation of the charter. We disagree.

We first note that section 16–2–9d, like § 45–55–5, permits the awarding authority to consider factors beyond price in its evaluation of bids. Our review of the record revealed that the school committee thoroughly considered the criteria set forth in the RFP in determining whether the public interest would best be served by awarding the contract to a higher bidder. We have already concluded that these criteria were objective, measurable, and part of the RFP, and we further conclude that the school committee's reasoning for selecting Gilbane reflected good faith and an exercise of sound discretion. It is our opinion that the school committee, in accordance with the charter, adequately "set forth its reasons" for accepting a higher bid in its resolution. Therefore, we hold that the trial justice was clearly wrong in finding that the award of the contract to Gilbane violated the charter and constituted a palpable abuse of discretion on the part of the school committee.

### Responsiveness of Gilbane's Bid

The trial justice also found that Gilbane's bid was nonresponsive because it failed to include costs for a performance bond, for the builder's-risk insurance, and for a building permit and because it did not provide a cash-flow chart and phase schedule. The RFP, however, did not require that each bidder produce a bond; rather, it required a bidder "to show evidence that it will be able to supply" such a bond, if required. Gilbane complied with this requirement in the form of a letter from its bonding company, Aetna Casualty and Surety Company of America

---

1. At oral argument, counsel for Gilbane suggested that because this construction management contract constituted a contract for "professional services," section 16–2–9b of the charter was also implicated and, therefore, "sealed competitive bids" were not even required under the charter in this case.

2. The amendment was ratified by the General Assembly in 1984, P.L.1984 ch. 168, § 2.

(Aetna). Aetna informed the building committee that it had "handled all of the bonding requirements of Gilbane for over 75 years" and had "executed performance and payment bonds on behalf of Gilbane for projects similar to [the high school project] in amounts up to and exceeding eighty million dollars ($80,000,000.00)." Aetna further "recommend[ed] Gilbane to [the building committee] as one of the outstanding Construction Managers in the country." Gilbane's proposal recommended that the bond be waived "as it was on the previous project." In addition, Gilbane advised that the town obtain an endorsement on its existing policy to cover a builder's risk rather than purchase separate builder's-risk insurance, a suggestion that would result in substantial savings to the town. In any event, the school committee in fact adjusted the other bids downward by reducing the amount of each bid to the extent costs for the bond and liability insurance were included. Consequently, no bidder was prejudiced by Gilbane's omission of these costs.

■ Although the committee made no adjustment for the cost of the building permit, we cannot conclude that Gilbane was nonresponsive in omitting this expense from its proposal, because the town in effect would be charging itself for this expense and because the town had waived this fee in previous town projects. We note that in his deposition, Malafronte acknowledged that it would make no sense for Barrington to charge itself for a building permit and further stated that, "the Town has never charged [the school department] for a [building] permit." In sum, we conclude that the school committee neither acted in bad faith nor palpably abused its discretion in selecting Gilbane's bid. As the building committee pointed out, Gilbane had demonstrated its value by making cost-saving suggestions in recommending waiver of the performance bond and of the fee for the builder's permit, and in recommending obtaining insurance by means of a rider on the town's existing insurance policy.

■ In respect to the cash-flow chart and phase schedule, Gilbane pointed out that the process was in too embryonic a posture to estimate accurately such cash-flow projections and that "[a] cash flow analysis is of little significance in a project not yet designed, budgeted or funded." In his deposition, Guida testified that, although Gilbane did not submit a cash-flow chart with its proposal, Gilbane did later submit such a chart. Guida also testified that the RFP did not require that the phase schedule actually be submitted with the bid proposal, but in any case that the building and school committees were able to determine how Gilbane would phase the project on the basis of the material that Gilbane did submit. Given the overall comprehensiveness of Gilbane's bid and the absence of any evidence that the school committee acted in a corrupt manner or in bad faith, we conclude that the committee did not err in its evaluation of the Gilbane bid in respect to the cash-flow chart and the phase schedule.

### Conclusion

■ In summary, then, we are of the opinion that the school committee arrived at its decision after evaluating each of the bids on the basis of objective, measurable criteria, all of which were published in the RFP. Therefore, we reject the trial justice's conclusion that the school committee acted in bad faith or in so unreasonable or arbitrary a manner as to commit a palpable abuse of discretion in awarding the contract to Gilbane. Consequently, we hold that the award of the contract by the school committee to Gilbane will not be disturbed. In so holding, we reaffirm the standard, set forth in *Gilbane, Goldman,* and *Truk Away,* that "when officials in charge of awarding a public work's contract have acted fairly and honestly with reasonable exercise of a sound discretion, their actions shall not be interfered with by the courts." *Truk Away,* 643 A.2d at 815 (quoting *Gilbane,* 107 R.I. at 302, 267 A.2d at 400). To hold otherwise would place the Judiciary in the position of litigating the award of every state and municipal contract and would place public officials in charge of awarding such contracts in the "legalistic straitjacket" that this Court denounced almost twenty-seven years ago. *Gilbane,* 107 R.I. at 302, 267 A.2d at 400.

In conclusion, we sustain the defendants' appeal and reverse the judgment of the Superior Court, to which we remand the papers in this case.

GOLDBERG, J., did not participate.