DECISION
Plaintiff W. Michael Sullivan, in his capacity as the Director of the Rhode Island Department of Environmental Management ("DEM"), seeks a declaration adjudging Ordinance 09-05 (Apr. 20, 2009) of the Middletown Code invalid. In addition, DEM seeks a permanent injunction enjoining Defendant Town of Middletown from enforcing the Ordinance. For the reasons set forth below, the Court denies DEM's petitions for declaratory judgment and injunctive relief.
 FACTS AND TRAVEL
This case revolves around Middletown, Rhode Island's efforts to regulate the use of firearms on certain portions of its shoreline. Middletown has slightly more than ten miles of coastline, including Second and Third Beaches, which comprise approximately 1.4 miles of beach. Second and Third Beaches, popular with swimmers and sunbathers during the summer, are also popular spots for activities such as dog-walking, jogging, and horseback riding during the off-season months.
Concerns about the potential hazards of hunters' discharging weapons in close proximity to the beaches' visitors motivated Middletown to amend its Code of Ordinances to prohibit *Page 2 
hunting on Second and Third Beaches. The amendment reads "[n]o person shall use or discharge any rifle or other firearm in the pursuit or hunting of birds or animals on any part of Second or Third Beach or the waters immediately adjacent thereto, including mooring areas as defined in Section 93.03 of the Town Code." Middletown Code of Ordinances, Title XIII, Chapter 130 § 130.68, as amended by Middletown, Rhode Island Ordinance 09-05 (Apr. 20, 2009) (hereinafter "the Ordinance").
In October 2009, DEM brought the instant action against both Middletown and the Town of Coventry, Rhode Island.[1] DEM seeks a declaration that the Middletown Ordinance is invalid because State statutes preempt municipal legislation governing hunting. The Court denied DEM's motion for a temporary injunction against Middletown on October 28, 2009. The remaining parties appeared before the Court again on November 19, 2009, at which point the parties agreed that the case presents only questions of law and that the facts are in dispute.
 ANALYSIS
The validity of Middletown's Ordinance rests upon two interrelated inquiries. First, did the Town have the legislative power to enact the Ordinance? Second, assuming that Middletown had the authority to enact the Ordinance, is the Ordinance preempted by a statewide statutory scheme regulating hunting? DEM specifically references G.L. 1956 §§ 42-17.1-2(1), 20-15-1 et seq., 20-13-1 etseq., and 20-1-1 et seq.
 Middletown's Authority To Enact the ChallengedOrdinance
"Traditionally, municipalities were considered mere creatures of the state and had no inherent right to self-government. . . .The home-rule amendment to the constitution altered this traditional view by empowering cities and towns to legislate with regard to all local matters." *Page 3 Viveiros v. Town of Middletown, 973 A.2d 607, 611 (R.I. 2009) (internal quotations omitted). However, municipalities' authority to legislate under the Home Rule Amendment to the Rhode Island Constitution is not unchecked. R.I. Const. art XIII, §§ 1, 4;Amico's Inc. v. Mattos, 789 A.2d 899, 903 (R.I. 2002). While municipalities may legislate with regard to local matters, matters of statewide concern are within the exclusive ambit of the state.Amico's, 789 A.2d at 903. In addition, the state retains "the power to act in relation to the affairs of all cities and towns as long as the enactment [does] not affect the form of government" and as long as the law applies alike to all municipalities.Providence Lodge No. 3, Fraternal Order of Police v.Providence External Review Authority, 951 A.2d 497, 504 (R.I. 2008); Amico's, 789 A.2d at 903.
When determining whether or not a municipality has the legislative power to enact an ordinance under its Home Rule Charter and Article 13 of the Rhode Island Constitution, a court must determine if the matter that is the subject of the regulation is of local or of statewide concern. See Amico's, 789 A.2d at 903. Three inquiries help resolve the question of whether a matter is of statewide or purely local concern:
 First, when it appears that uniform regulation throughout the state is necessary or desirable, the matter is likely to be within the state's domain.
 * * *
 Second, whether a particular matter is traditionally within the historical domain of one entity is a substantial consideration.
 * * *
 Third, and most critical, if the action of a municipality has a significant effect upon people outside the home rule town or city, the matter is apt to be deemed one of statewide concern. Marran v. Baird, 635 A.2d 1174, 1178 (R.I. 1994) (quoting Town of East Greenwich v. O'Neil, 617 A.2d 104, 111 (R.I. 1992)).
Middletown relies upon two sources of authority for its power to enact the challenged Ordinance: its Home Rule Charter and G.L. 1956 § 45-6-1(a). Middletown's Home Rule Charter *Page 4 
empowers its Town Council "[t]o enact, amend or repeal ordinances for the preservation of the public peace, health, safety, comfort and welfare, and for the protection of persons and property." Middletown, Rhode Island Home Rule Charter, art. II, § 207(m). Section 45-6-1(a) empowers city and town councils to:
 make and ordain all ordinances and regulations for their respective towns and cities, not repugnant to law, which they deem necessary for the safety of their inhabitants from fire, firearms, and fireworks. . .and, generally, all other ordinances, regulations and bylaws for the well ordering, managing, and directing of the prudential affairs of police of their respective towns and cities, not repugnant to the constitution and laws of this state, or of the United States. (Emphasis added.)
In determining whether the Town legislated on a matter of local or statewide concern, the Court begins with the "most critical" factor, whether the municipality's action has a significant effect on people outside of Middletown. See Marran, 635 A.2d at 1178. The Court agrees with the Town that most of the hunters affected by the Ordinance probably are Middletown residents. Furthermore, the effect of the Ordinance on out-of-towners is unlikely to be significant in light of the availability of other hunting grounds, including over 40,000 acres of state-managed land available for hunting.See Rhode Island Department of Environmental Management Division of Fish and Wildlife 2009-2010 Rhode Island Hunting andTrapping Abstract, p. 16 (2009). Further, the Town is regulating activity only within the confines of the Town. As for the second factor, regulating firearms in the interest of public safety has traditionally been within the domain of municipalities, not the State. See G.L. 1896, ch. 40, § 21 (1896) (current version at G.L. 1956 § 45-6-1(a)) (demonstrating that as early as 1896, municipalities had the authority to make ordinances "which they may deem necessary for the safety of their inhabitants from fire,firearms, fireworks, explosion of gunpowder . . . and, generally, all other ordinances . . . for the well-ordering, managing and directing of the prudential affairs and police of their respective *Page 5 
towns. . .") (emphasis added). Again, these are Town-owned beaches, and the Town operates the beaches. Owners of property are expected to have some control over the actions of invitees to their property. "The party in control of the instrumentality causing the alleged nuisance is best positioned to abate it and, therefore, is legally responsible." State v. Lead Industries, Ass'n, Inc.951 A.2d 428, 449 (R.I. 2008) (citing Donald G. Gifford, PublicNuisance as a Mass Products Liability Tort, 71 U. Cin. L. Rev. 741, 820). Accordingly, municipalities are allowed to set reasonable regulations for the operation of their own beaches.[2]
In reflecting on the final factor — whether uniform regulation is necessary or desirable — the Court notes that safety is an extremely compelling consideration in regulating either firearms in general or hunting in particular. As our State Supreme Court has opined in another case about regulation of leisure activities on Third Beach in Middletown, "[m]unicipalities and towns are in the best position to regulate public safety issues such as licensing dogs or determining the appropriate conditions for the riding of horses on beaches during seasons when beachgoing increases dramatically."Hourihan v. Town of Middletown 723 A.2d 790, 791 (R.I. 1998). Municipalities' unique ability to identify and respond to local threats to public safety militates against the desirability of a uniform statewide system of regulations. Thus, in light of the three factors described in Marran, the Court finds that regulation of firearms for public safety purposes at local recreational areas is a local concern. See 635 A.2d at 1178.
In Hourihan, the Court held that Middletown's Home Rule Charter, together with § 45-6-1, were sufficient to authorize the Town to enact an ordinance to limit horseback riding on certain of the Town's beaches for the purposes of public safety. Section 45-6-1(a); Hourihan, 723 A.2d at 791. TheHourihan Court based its holding on the fact that the horseback riding *Page 6 
regulation was premised on public safety concerns and that both the Charter and the statute permitted legislation for public safety.Id.; see also Town of Westerly v. Bradley, 877 A.2d 601,607-08 (R.I. 2005) (holding that Westerly's Home Rule Charter and § 45-6-1(a) authorized the town to prohibit swimming in hazardous areas by ordinance). Because firearms are as ominous a threat to public safety as an errant horse, and because the statute specifically singles-out firearms as an area appropriate for regulation by ordinance, the Court holds that Middletown had the authority under its Charter and § 45-6-1(a) to enact the challenged Ordinance, at least insofar as the Ordinance regulates conduct above the mean high water mark.[3] Because the Ordinance deals with a matter of local rather than statewide concern, it does not offend Article 13, section 1 of the Rhode Island Constitution.
 Preemption
"It is declared to be a fundamental principle that municipal ordinances are inferior in status and subordinate to the laws of the state . . . It is also recognized in this jurisdiction that an ordinance inconsistent with a state law of general character and state-wide application is invalid." O'Neil, 617 A.2d at 109. A municipal ordinance may be preempted by state law in two ways.Coastal Recycling, Inc. v. Connors, 854 A.2d 711, 715 (R.I. 2004). First, a local ordinance is preempted if it conflicts with or disrupts a state statute or statutory scheme. Id.; Munroev. Town of East Greenwich, 733 A.2d 703, 710 (R.I. 1999). Second, a "`municipal ordinance is preempted if the Legislature intended that its statutory scheme completely occupy *Page 7 
the field of regulation on a particular subject.'" ProvidenceLodge No. 3, 951 A.2d at 504 (quoting Town of Warren v.Thornton-Whitehouse, 740 A.2d 1255, 1261 (R.I. 1999)).
A municipal ordinance does not conflict with a state statute when the ordinance is "`not inconsistent'" with the Rhode Island Constitution or the laws of the State. Amico's,789 A.2d at 907 (quoting R.I. Const. art. XIII, § 2). InAmico's Incorporated v. Mattos, a municipality enacted an ordinance creating stringent new requirements for restaurants that permitted smoking. Id. Specifically, the ordinance required local restaurants to locate their "smoking sections" in separate rooms with solid walls and automatically-closing doors.Id. The preexisting State statute governing smoking in restaurants "provide only a skeletal or baseline standard for licensing, leaving to cities and towns the addition of flesh and blood details by ordinance unless the Legislature by express language or action directs otherwise." Id. InAmico's as in the case at bar, the Ordinance augments rather than conflicts with the statute's requirements. Id.; seealso Coastal Recycling, 854 A.2d at 715 (stating that an ordinance conflicts with a statute when the ordinance "contradicts the language in the statute.") In contrast, our State Supreme Court found that a Home Rule Charter conflicted with and was preempted by the Development Review Act, G.L. 1956 § 45-23-25 et seq., where the statute specifically required that the planning board review and adjudicate development and subdivision applications but the Charter designated the Town Council as the entity in charge inMunroe v. Town of East Greenwich, 733 A.2d at 709.
Here, DEM argues that Middletown's Ordinance regarding hunting on Second and Third Beaches is preempted by §§ 42-17.1-2(1), 20-15-1et seq., 20-13-1 et seq., and 20-1-1 et seq. An examination of these statutes reveals that the Ordinance does not conflict with, disrupt, or contradict them. These statutes, which pertain to hunting and DEM's authority to regulate hunting, do not require that some or all municipal land must be open to hunting. Nor do DEM's *Page 8 
regulations require that certain land must be open to hunting.See State of Rhode Island and Providence Plantations Department of Environmental Management R.I. Hunting Regulations for the Waterfowl Season 2009-2010; State of Rhode Island and Providence Plantations Department of Environmental Management Division of Fish and Wildlife Hunting Regulations for the 2009-2010 Season. Thus, the Court finds that the challenged Ordinance does not conflict with State statutes or regulations related to hunting.[4]
DEM postulates that the Middletown Ordinance is preempted by State statutes because it disrupts DEM's scheme of animal population control through hunting. "[S]tate preemption of municipal enactments occurs when the ordinance substantially interferes with the effective functioning of the statute or its underlying purpose." 6 Eugene McQuillin Municipal Corporations § 21:35 (3rd revised ed. 2007) (emphasis added). DEM failed to produce any evidence that the hunting or animal control activities would be impaired by the Town's regulation. As the Town points out, only a very small area of potential hunting ground is affected by the Ordinance. The Town's prohibition on hunting with firearms on 1.4 miles of beachfront is ade minimus, insubstantial disruption of the State's animal control scheme or the sport of hunting.
The delegation of authority to enact ordinances regarding firearms, explicit in § 45-6-1(a) demonstrates Middletown's Ordinance is a part of the scheme of hunting regulation rather than a disruption of that scheme. See § 45-6-1(a); see alsoChamplin's Realty Associates v. Tillson, 823 A.2d 1162, 1170
(R.I. 2003) (stating that in the face of potentially-conflicting, explicit grants of authority from the General Assembly, courts should attempt to read state statutes and *Page 9 
local ordinances in harmony with each other.) In the context of hunting regulation, § 45-6-1(a) serves the important purpose of allowing municipalities to identify and regulate areas in which discharge of firearms is unsafe. The State statutes regulating hunting and DEM regulations are noticeably short on such limitations. Waterfowl Season Rule 7-1.9 lists only seven locations closed to hunting.[5] R.I. Hunting Regulations for the Waterfowl Season 2009-2010 Rule 7-1.9. The regulations note another seven locations where there are some additional restrictions, including an admonition to check local municipal ordinances for additional rules. R.I. Hunting Regulations for the Waterfowl Season 2009-2010 Rule 7-1.10. Neither of these lists gives any indication that it is meant to be exhaustive. Chapter 13 of Title 20 of the General Laws prohibits hunting within 500 feet of an occupied building or accessory structure and in proximity to roadways, but is otherwise silent on geographic prohibitions on hunting. Sections 20-13-7, -9. Read together, the statutory scheme and DEM's regulations give the impression that the State relies on the municipalities to use their authority under § 45-6-1(a) to prohibit gunfire in places where it would pose a safety risk. Thus, the Court finds that the Ordinance does not substantially disrupt the State's regulatory scheme.
When determining whether the State occupies the field of regulation to such an extent that even consistent municipal regulations are preempted
 . . . the usual question is whether the Legislature manifestly has controlled the subject area and has not delegated any of its authority to the cities and towns, such as is the case with respect to the spheres of education, elections, and taxation. . . .[A] municipal ordinance is preempted if the Legislature intended that its statutory scheme completely occupy the field of regulation on a particular subject. Providence Lodge No. 3, 951 A.2d at 504
(quotations omitted). *Page 10 
Occasionally, the General Assembly unmistakably expresses its intention that the State should occupy the field of regulation.See Champlin's Realty Associates, 823 A.2d at 1170 (explaining that statute gives the Coastal Resource Management Council exclusive jurisdiction over some areas of regulation). However, the legislature's intent to completely occupy a field "may be implied in the legislative scheme." Amico's, 789 A.2d at 907.[6]
The General Assembly did not intend that the State should completely occupy the field of hunting and firearms regulation so as to preempt even consistent municipal legislation. In § 42-17.1-2(1), the statute empowers the Director of DEM to "supervise and control the protection, development, planning, and utilization of the natural resources of the state . . . including . . .mammals, birds . . .and animal life[.]" Unlike the statutes relating to coastal resources management and public utilities regulation, § 42-17.1-2(1) does not indicate that the State has "exclusive" control. Similarly, § 20-1-2 vests "authority and responsibility over the fish and wildlife of the state" in the Director of DEM, but does not suggest that the legislature intended to exclude municipalities from the regulatory equation. Section 20-1-2. The General Assembly, by delegating power with relation to some aspects of hunting regulation to municipalities, envisioned a regulatory scheme with both State and local involvement in hunting and firearms control. *Page 11 
As discussed above, Middletown's authority to enact the challenged Ordinance came from its Home Rule Charter and from § 45-6-1(a), which empowers municipalities to regulate firearms for safety purposes. See § 45-6-1(a); Middletown, Rhode Island Home Rule Charter, art. II, § 207(m). The statutory sections demonstrate that the General Assembly did not intend to reserve all regulatory powers to the State or to so thoroughly and completely occupy the field of regulation as to preempt all local legislation on the topic.[7]
For the reasons set forth above, Middletown's Ordinance neither contradicts any State statutes nor disrupts the State's regulatory scheme relating to hunting. In addition, the General Assembly has not evinced an intent, either expressly or by implication, to so thoroughly and completely occupy the field of regulation as to preempt all municipal regulations on the topic. "Absent a direct conflict between a statute and an ordinance, or some other clear indication . . . that the General Assembly intended to occupy the field of . . . regulation to the exclusion of local . . . authorities, state law will not be held to preempt local ordinances in this area." El Marocco Club, 746 A.2d at 1232. Therefore, Middletown's Ordinance is not preempted by State law.
Having held that the Town had the authority under its Home Rule Charter and § 45-6-1(a) to pass the challenged Ordinance and that the Ordinance is not preempted by State law, the Court holds that the Middletown Ordinance is not preempted by the State's regulatory scheme, and the Court declines to issue the declaratory judgment requested by DEM. The Court has *Page 12 
considerable discretion when deciding whether a declaratory judgment is appropriate, and it is inappropriate in this case. Town ofBarrington v. Williams, 972 A.2d 603, 608 (R.I. 2009).
In addition, the Court denies DEM's request for injunctive relief. The Plaintiff has not succeeded on the merits of his case, nor has he shown that the equities weigh in favor of DEM — prerequisites to the issuance of a permanent injunction. See NationalLumber Building Materials Co. v. Langevin, 798 A.2d 429, 434
(R.I. 2002). Also, DEM has not demonstrated that it will suffer irreparable harm without the requested injunction. See id.;see also R.I. Turnpike Bridge Authority v. Cohen,433 A.2d 179, 184 (R.I. 1981) (holding that "[s]urmise alone cannot afford the basis for injunctive relief.")
 CONCLUSION
Plaintiff's request for a declaration adjudging Middletown Code of Ordinances, Title XIII, Chapter 130 § 130.68, as amended by Middletown, Rhode Island Ordinance 09-05 (April 20, 2009) to be invalid is denied. Plaintiff's request for an injunction enjoining enforcement of the challenged ordinance likewise is denied.
[1] DEM seeks no further recovery against the Town of Coventry. Middletown is the only Defendant remaining in the case.
[2] It appears that the Town of Middletown owns the beaches, per the complaint, paragraph 22.
[3] At the November 19, 2009 hearing, DEM asserted that the Ordinance regulates at least some conduct below the mean high water mark. Activities below the mean high water mark most likely would be incidental to hunting activities on the beach proper, and may be the subject of other regulation. Nonetheless, the Court limits its holding to the portions of Second and Third Beaches above the mean high water mark and does not opine as to the validity of the restrictions below the mean high water mark.
[4] This raises a curious issue. As the Town's Ordinance is not in conflict and seeks to expand public safety, why would DEM institute this action to declare it invalid? This case was not brought by an individual questioning the ability of a town to regulate, but by a large state department, concerned about the expanse of its turf with an issue it chose not to regulate.
[5] Ironically, one of the locations is in Middletown "Sachuest Point (NWR) shoreline below mean high water to mean low water surrounding the National Wildlife Refuge property is closed to all hunting. No hunting along shoreline." Regulation 1.9.6
[6] There is no set formula for determining whether the legislature, by implication, has completely occupied a field of regulation on behalf of the State. See Providence LodgeNo. 3, 951 A.2d at 503-05 (holding that the General Assembly did not intend to preempt all local police officer discipline with the Law Enforcement Officers' Bill of Rights, § 42-28.6-1 etseq.); Coastal Recycling, 854 A.2d at 715 (the state's regulating of municipal bidding procedures did not strip towns of right to self government in all local matters); Champlin's RealtyAssociates, 823 A.2d at 1169 (Coastal Resource Management Council's enabling statute gives the State "exclusive jurisdiction below mean high water for all development, operations, and dredging"); Amico's, 789 A.2d at 907-08 (the legislature did not intend to completely occupy the field of regulating smoking);El Marocco Club v. Richardson, 746 A.2d 1228, 1232-33 (R.I. 2000) (holding no legislative intent to occupy the field where the State had delegated authority on various matters related to entertainment in bars and nightclubs to municipalities);O'Neil, 617 A.2d at 109-10 (the legislature intended for Public Utilities Commission to occupy the entire field of regulation).
[7] The fact that DEM appears to recognize the validity of at least some municipal ordinances concerning hunting weighs against an interpretation of the statutes — §§ 42-17.1-2(1), 20-15-1 etseq., 20-13-1 et seq., and 20-1-1 et seq. — as fully occupying the field of regulation. DEM published a summary "of the rules, regulations, seasons and bag limits" relating to hunting for the 2009-2010 season. 2009-2010 Rhode Island Hunting and TrappingAbstract 3. This publication warns hunters to ask town clerks or local police departments about municipal hunting ordinances, especially Sunday hunting bans. Id. at 21.