[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter came on for consideration before the Court in April 2005. By agreement of the parties, the trial on the merits was consolidated with the injunction hearing. The trial of this case is now complete. On April 15, 2005, this Court denied the request of J.G. Edwards Construction Co., Inc. (Edwards) for a preliminary injunction and vacated the temporary restraining order which had previously been issued.
Edwards' complaint sounded on three counts. The first count was a general allegation that the Defendants had failed to follow the appropriate procedure in granting a municipal bid. Count Two specifically requested injunctive relief; while Count Three requested a declaratory judgment. The Court has previously denied the injunctive relief and the purpose of this decision is to decide the request for a declaratory judgment.
 Findings of Fact
This case arises out of a request for bids for construction of a new police station for the Town of Charlestown (Charlestown or Town). In December of 2004, Charlestown issued an invitation to bid, seeking bids from contractors interested in building the new Charlestown police station. The bid was advertised and the advertisement was admitted as Exhibit 1. Charlestown also prepared a Project Manual (Ex. 2)[1] which was released to prospective bidders. A pre-bid conference was conducted by the architect and Charlestown officials on January 6, 2005. Pursuant to the terms of the advertisement, bids were to be submitted by February 1, 2005. As shown on Exhibit C, eight timely bids were received and opened. Charlestown then requested that the architect review the three low bids to determine if they were correct, appropriate and qualified.
As shown by the bids received (Ex. 3), the bid form requires several alternatives for the construction to be set forth separately (Section C of the bid form) and components of the bid to be specified. (Section D of the bid form.)
After the opening of the bids, Edwards was the second lowest bidder. The lowest bid was submitted by A.D.S. Construction, Inc. (A.D.S.) of East Providence, Rhode Island. Shortly after the architect began his investigation, the principals of A.D.S. informed Charlestown that an error occurred on their low bid. The labor amount on the bid was undervalued. Hence, the total amount of the bid should be increased by $153,542 to a total correct bid amount of $2,583,542. (Ex. 5.) The architect promptly communicated this change to Charlestown Administrator, who then informed Charlestown Council.
Town Administrator Richard Sartor testified that he was surprised at how low the initial bid was. When the bids were opened, he sent the three low bids to the architect to determine if they were correct, appropriate and qualified. The A.D.S. contained a disparity concerning the cost of materials for the construction. The Town had some contingency money available, wanted to complete the project expeditiously. The Town did not want to start the project with a contentious relationship with its contractor. Even after the change, A.D.S. was the lowest responsible bidder, hence the Town agreed to accept the revision of the A.D.S. bid.
Approval of the Charlestown police station had long been a contentious issue in Charlestown. Nevertheless on March 14, 2005, the Charlestown Town Council approved the award of the increased bid to A.D.S. After communications were sent to Charlestown by counsel for Edwards, a complaint was filed on March 29, 2005. The Court issued a temporary restraining order on March 31, 2005 enjoining Charlestown from issuing a notice to proceed to A.D.S. pending a hearing on the preliminary injunction. A.D.S. intervened shortly thereafter.
 Applicable Law
The Charlestown Town Charter sets several parameters for bid awards. (Ex. 10.) Section C-103E of the Charter requires competitive sealed bids for acquisitions of over $5,000 and states:
 Award of any bid in this category shall be to the lowest responsible bidder most nearly meeting the specifications of the purchase order, and with the approval of the Council. In any event, the Council shall have the right to reject any and all bids and to direct the Administrator to solicit new bids.
Rhode Island General Laws § 45-55-5 describes competitive sealed bidding for the award of municipal contracts. It states, in part:
 (e) The contract shall be awarded with reasonable promptness with written notice to the responsive and responsible bidder whose bid is either the lowest bid price, or lowest evaluated or responsive bid price.
 (f) Correction or withdrawal of bids may be allowed only to the extent permitted by regulations issued by the purchasing officer.
 Question Presented
Edwards contends that the bid process of Charlestown was improper and seeks an order preventing issuance of any "Notice to Proceed" to A.D.S. Specifically, Edwards suggests that Charlestown should not have allowed A.D.S. to modify its bid.
 Analysis
1. Standing.
The court notes that a significant question of standing is presented. Edwards is an unsuccessful bidder. It is not a party to the new contractual relationship being formed by A.D.S. and Charlestown. Even if the Court granted Edwards the relief it requests, Edwards would not necessarily be awarded the contract. The parties did not press this significant question at hearing.[2]
2. The Standard for Review of Bid Awards.
Edwards does not point to a clear statute or ordinance which Charlestown violated. Charlestown is not to change bid awards arbitrarily. Edwards focuses on § 4-4.2 of the Bid Instructions, which restricts changes in the bids for a period of 60 days. However, at the time the A.D.S. bid changed, A.D.S. was already the lowest bidder (though not yet qualified). Even after the bid was amended, A.D.S. remained the low bidder. The bid was changed by the consent of both parties to the contract. Charlestown explained at trial how the amendment was beneficial to the Town, as it retained the lowest bidder at a realistic price for the bidder.
In a very recent case, the Rhode Island Supreme Court discussed the standards for overturning a bid award. The Court stated, in part:
 "In Gilbane Building Co., 107 R.I. at 302, 267 A.2d 400, this Court noted that: `we do not believe . . . that those whose duty it is to contract for the construction of a public improvement should be placed in a illegalistic straight jacket. We have longed presumed that public officers will perform their duties properly. It is our belief that courts can and will recognize corruption, bad faith or a manifest abuse of discretion when it appears from the evidence presented in a case. Nevertheless, when officials in charge of awarding a public work's contract have acted fairly and honestly with reasonable exercise of a sound discretion, their actions should not be interfered with by the courts.'
 We are quite certain that `any good lawyer can pick lint off any government procurement project. . . .' Andersen Consulting v. U.S., 959 F.2d 929, 932 (Fed. Cir. 1992) (quoting 91-1 B.C.A. (CCH) at 117, 759). To rise to a showing of probable abuse of discretion, however, one must establish that not only were there violations of the law but also that those violations were significant. There is little doubt that the public officials charged with overseeing the bid process in this case were to a large extent uninformed, overworked and ill-prepared to tackle such a mountainous task — particularly since those responsible for oversight failed to read and familiarize themselves with the relevant statutory requirements, in violation of the state procurement regulations.
 Once the contract is awarded, the question on review is not whether errors are committed — surely they were — but indeed whether such errors rise to a level of a palpable abuse of discretion. Blue Cross never alleged bad faith or corruption by the State; nor did the trial justice make such a specific finding. Thus, we need consider only whether the State's conduct rose to the level of palpable abuse of discretion." Blue Cross Blue Shield of Rhode Island v. Najarian, 865 A.2d 1074, 1084-5 (R.I. 2005). Footnote omitted.
In sum, the awarding authorities are given significant discretion unless there is a showing of bad faith or corruption. In this action, Edwards neither alleged nor demonstrated bad faith or corruption by Charlestown, or any of its officials.
Blue Cross was explicit on the abuse of discretion required:
 "In the absence of bad faith or corruption, a finding of palpable abuse of discretion should be approached with grave caution and be based upon much more compelling evidence of arbitrariness or capriciousness than may be found in mere complexity." Id. at 1087. (citing Truk Away of Rhode Island Inc. v. Macera Bros. of Cranston, 643 A.2d 811, 816 (R.I. 1994)).
See also Paul Goldman, Inc. v. Burns, 109 R.I. 236, 240,283 A.2d 673, 676 (1997), which held that the awarding authority did not err by taking into consideration factors not listed in the Request for Proposals before awarding a municipal contract to the second lowest bidder.
Rhode Island General Law § 45-55-5(f) provides municipal governments some latitude even after competitive sealed bids are opened. More significantly, § 5.3.1 of the bidding requirements infers that the owner is given some latitude in changing the bid award. Read in concert with the statute, the bid instructions leave Charlestown with significant discretion.
3. Application of the Bid Award Standard.
As indicated, Edwards approached Charlestown after the bids were opened and while they were being reviewed. A.D.S. and Charlestown submitted significant proof to establish that the goal was to correct a simple error by the bidder and, if corrected, A.D.S. would continue as the low bidder by far. The Charlestown Town Administrator testified that Charlestown's goal was to get the station built and not fight with the contractor once the construction started. By assessing the labor costs and recognizing that the amount in the bid was low and would likely need to change, Charlestown anticipated a problem in the future which it wanted to avoid.
Although this procedure made the price of the project increase, the Town Administrator revealed Charlestown's concern to retain the low bidder at a low price. From the Town's perspective, it was more reasonable to contract at a fair price rather than contesting the value of the bid, leaving a disgruntled general contractor. Charlestown was concerned that the entire bid may fail. Charlestown did not desire to rebid, but wanted to hold onto its qualified, low bidder. Even the revised bids submitted by A.D.S. were significantly lower then the bid which had been submitted by Edwards.
Charlestown also provided a rational explanation of why it desired to proceed so quickly. The project had succeeded by a number of close votes and there was an urgency to initiate the project timely within the parameters which had been set by Charlestown financial meeting.
Thus, Charlestown provided a reasonable explanation as to why the change was occurred and why the Charlestown wanted to make the change. Given the entire facts of the situation, the Court cannot find a palpable abuse of discretion. Charlestown's actions were not arbitrary or capricious, but simply an attempt to complete construction promptly at a reasonable price.
 Conclusion
Charlestown acted reasonably and did not commit an palpable abuse of discretion. The Court, therefore, declares that Charlestown's procedure was appropriate and in accord with the Rhode Island General Laws. The Court denies Edwards's request to declare the Bid project process in violation of the Rhode Island bidding statute, G.L. § 45-55-1 et seq. The request of Edwards for injunctive relief and for declaratory judgment is denied. A final judgment shall enter in favor of the Defendant Town of Charlestown.
[1] The bid manual states, in part:
Section 4.4 — Modification or Withdrawal of Bid.
 Section 4.4.1 — No Bidder may withdraw, modify or cancel a Bid within 60 calendar days after the actual date of the opening thereof. Should there be reasons why the Contract cannot be awarded within the specified period, the time may be extended by mutual agreement between the Owner and the Bidder and the concurrence of the Agency.
 Section 4.4.2 — Prior to the time and date designated for receipt of Bids, a Bid submitted may be modified or withdrawn by notice to the party receiving Bids at the place designated for receipt of Bids. Such notice shall be in writing over the signature of the Bidder. Written confirmation over the signature of the Bidder shall be received, and date and timestamped by the receiving party on or before the time set for receipt of Bids. Change shall be worded as not to reveal the amount of the original Bid.
 5.3 — Acceptance of Bid (Award).
 5.3.1 — It is the intent of the Owner to award a Contract to the lowest qualified Bidder provided the Bid has been submitted in accordance with the requirements of the Bidding Documents and does not exceed the funds available. The Owner shall have the right to waive informalities and irregularities in a Bid received and to accept the Bid which, in the Owner's judgment, is in the Owner's own best interest.
5.3.2 — * * *
 5.4.3 — Withdrawn Bids may be resubmitted up to the date and time designated for the receipt of Bids provided that they are then fully in conformance with the Instructions to Bidders.
[2] It should also be noted that Edwards, although the second lowest bidder, does not necessarily have injury in fact. It is not clear whether Edwards would have been awarded the bid if the bid submitted by A.D.S. was rejected or disqualified.