#27077-a-SLZ

**2015 S.D. 3**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

NICK J. LOWE, and CROELL
REDI-MIX, Inc., an Iowa corporation,                    Plaintiffs and Appellants,

v.

CITY OF HOT SPRINGS, a South
Dakota municipal corporation
and PETE LIEN & SONS, INC.,
a South Dakota corporation,                             Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
FALL RIVER COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ROBERT A. MANDEL
Judge

* * * *

THOMAS E. BRADY of
Brady & Pluimer, PC
Spearfish, South Dakota                    Attorneys for plaintiffs
                                           and appellants.


DONALD P. KNUDSEN of
Gunderson, Palmer, Nelson
 & Ashmore, LLP
Rapid City, South Dakota                   Attorneys for defendant and
                                           appellee City of Hot Springs.


LARRY M. VON WALD
JESSICA L. LARSON of
Beardsley, Jensen & Von Wald, LLC
Rapid City, South Dakota                   Attorneys for defendant and
                                           appellees Pete Lien & Sons, Inc.

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 12, 2015
OPINION FILED **01/28/15**

#27077

ZINTER, Justice

[¶1.]         The City of Hot Springs (the City) requested proposals from private entities interested in using real property that belonged to the City.  Pete Lien & Sons, Inc. (Lien) and Croell Redi-Mix (Croell) both submitted proposals to lease the property on various terms and conditions.  Lien's proposal was accepted, and a final agreement was negotiated.  Croell subsequently sued to require the City to reject all proposals and restart the process.  Croell contended that the City failed to adhere to the statutory requirements that municipalities must follow in contracting for the procurement of services.  Lien and the City contended that service procurement statutes did not apply because the City was leasing its real property.  The circuit court granted summary judgment to Lien and the City, and Croell appeals.  We affirm.

*Facts and Procedural History*

[¶2.]         The City owned 517.2 acres of land adjacent to the City's airport.  The City had been leasing the property for agricultural purposes.  It had also been using the property for the disposal of "sludge" from its waste water treatment facility.  On January 8, 2013, the City published a request for competitive sealed proposals (RFP) for continued utilization of the property.  The RFP had five options.

[¶3.]         Option 1 contemplated a lease for agricultural crop production.  The option stated that "[t]he term of the lease [was] subject to negotiation[.]"  Proposals under Option 1 were also to "include a written statement concerning the intentions of the Lessee on the disposal of the sewer sludge on the real property covered by this Lease."

[¶4.]    Option 2 contemplated a lease for removal of sand and gravel from the property. The option stated that the proposal was for "the lease of real property for the purpose of extracting sand and gravel" with "[t]he term of the lease . . . subject to negotiation." The option also stated that the mineral extraction plan "[would] be coordinated with the Lessee."

[¶5.]    Option 3 involved the purchase and disposal of sludge from the City's waste water treatment facility. This option contemplated "the sale of sewer sludge to be applied to eligible farm land in the area."

[¶6.]    Option 4 was open ended. It contemplated uses of the property other than those described in Options 1, 2, and 3. The option stated: "The proposal must give a brief description of the activity and the amount of the annual payment to the City of Hot Springs. The term of the property lease [was] negotiable."

[¶7.]    Option 5 was for any combination of Options 1, 2, 3, and 4. Therefore, it "allow[ed] a potential lessee to raise crops, extract sand and gravel, apply sewer sludge or do something else on the property or any combination of activities." Again, "[t]he term of the lease for the real property [was] subject to negotiation[.]"

[¶8.]    Both Lien and Croell submitted proposals. Lien offered to lease the property for $1,000,000 ($100,000 per year for ten years) to extract sand and gravel under Option 2. In addition, Lien offered a combination proposal under Option 5. Lien "propose[d] a revenue share program with the City of Hot Springs" for the crops produced under Option 1. Lien also offered "to assist the City in finding properties to expand lagoons to facilitate the sale and disposal of sewer sludge

under Option 3." And Lien offered to assist the City "with the selected multi-use option of choice proposed under Option 4."

[¶9.]     Croell's proposal involved an "offer[ ] to purchase or enter into a long-term lease with the City . . . for $500,000" under Options 2 and 3. Croell also offered to deed back the property and an existing gravel pit (approximately 163 acres) after gravel extraction was completed. Croell further indicated that it "would allow the City . . . to continue to spread the bio solids produced from their waste water treatment facility as well as give the City . . . use of [their] 24 acre accessible agricultural property for spreading bio-solids." Croell indicated that the "[t]erms of [its] proposed lease agreement [were] negotiable."

[¶10.]    The City reviewed the submissions and accepted Lien's proposal, contingent on negotiating a final contract. On September 9, 2013, the City published legal notice that it intended to lease the property to Lien and that issue would be considered at a public hearing on October 7, 2013. During the October 7 hearing, the City adopted a resolution declaring its intent to enter into an agreement with Lien for the purpose of leasing the property for mining.

[¶11.]    A final contract was subsequently negotiated. Under the contract, Lien agreed to lease the property for $1,000,000 over ten years for sand and gravel extraction; Lien was to pay the City 100% of the net income from farming operations; and, Lien agreed to make its property available to the City for the deposit of biosolids if the City needed additional acreage. The contract also included an alternative agreement to either enter into a separate land exchange agreement

to transfer land to the City to address the City's need for additional sewage sludge and lagoon expansion or Lien would pay the City a $150,000 donation.[1]

[¶12.]     Croell and Nick Lowe (a citizen, resident, and taxpayer) (both parties are hereinafter referred to as "Croell") subsequently commenced this action seeking declaratory and injunctive relief to require the City to reject all proposals and restart the RFP process. Both Croell and Lien moved for summary judgment. Croell argued that the contract involved the procurement of services and that the City had not followed the services procurement requirements of SDCL 5-18A-6 and SDCL 5-18A-7. Lien argued that the contract was for the lease of real property, which was not governed by those statutes. Lien also argued that the City had complied with the municipal lease requirements of SDCL 9-12-5.1 and SDCL 9-12-5.2.

[¶13.]     There is no dispute that the City did not follow the service procurement statutes, but it did follow the lease statutes. Therefore, the issue on appeal is whether the City's RFP and subsequent contract with Lien involved the procurement of services or a lease of the City's property.[2]

---

1.    Because the contract was subject to approval by the Federal Aviation Administration, the contract had not been executed at the time of the circuit court's decision.

2.    "The standard of review for summary judgment is well settled." *Brandt v. Cnty. of Pennington*, 2013 S.D. 22, ¶ 7, 827 N.W.2d 871, 874.

> We must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific
>
> (continued . . .)

#27077

*Decision*

[¶14.] Croell argues that the RFP and contract involved the procurement of services. Croell points out that the contract required Lien to use "every effort" to farm the leased premises. Croell also points out that the contract required Lien to provide property for sewer sludge and lagoon expansion or donate $150,000 if there was not a land exchange, and Lien agreed to make its property available for sewer sludge deposit if necessary. Croell argues that these lease provisions involved the procurement of "services" by the City. Therefore, Croell contends that SDCL 5-18A-3[3] mandated certain procedures for competitive sealed proposals. Croell specifically contends that the City was required to follow the service procurement requirements of SDCL 5-18A-7.[4] We disagree.

---

(. . . continued)

> facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Id.* (quoting *Jacobson v. Leisinger*, 2008 S.D. 19, ¶ 24, 746 N.W.2d 739, 745). "The circuit court's conclusions of law are reviewed de novo." *Tolle v. Lev*, 2011 S.D. 65, ¶ 11, 804 N.W.2d 440, 444 (quoting *Johnson v. Sellers*, 2011 S.D. 24, ¶ 11, 798 N.W.2d 690, 694).

3.  SDCL 5-18A-3 provides in relevant part: "[E]ach contract for supplies, services, and construction shall be awarded by . . . [c]ompetitive sealed proposals as provided in §§ 5-18A-6 and 5-18A-7[.]"

4.  Croell argues that the City violated subsections (1), (5), and (6) of SDCL 5-18A-7, which provide in relevant part:

> The procedures for issuing a contract through competitive sealed proposals are as follows:

>> (1) The proposals shall be solicited through a request for proposals. The request for proposals shall state

(continued . . .)

[¶15.]    Although cities are required to follow those statutes when procuring services, other statutes govern a city's lease of its municipal property. SDCL 9-12-5.1 specifically authorizes a lease of municipal property on conditions: "Every municipality may lease its municipally-owned property. Any such lease shall be for a term and upon the conditions provided by resolution of the governing body." SDCL 9-12-5.2 contains the requirements for entering into such leases.

> If the governing body decides to lease any municipally owned property to any private person for a term exceeding one hundred twenty days and for an amount exceeding five hundred dollars annual value it shall adopt a resolution of intent to enter into such lease and fix a time and place for public hearing on the adoption of the resolution. Notice of the hearing shall be published in the official newspaper once, at least ten days prior to the hearing. Following the hearing the governing body may

_____

(. . . continued)

> the relative importance of price and other factors, if any;
>
> . . .
>
> (5)    . . . Each offeror shall be accorded fair and equal treatment with respect to any opportunity for discussion and revision of a proposal. A revision may be permitted after a submission and prior to an award for the purpose of obtaining the best and final offer. . . . [;]
>
> (6)    An award shall be made to the responsible offeror whose proposal conforms to the solicitation and is determined in writing to be the most advantageous to the purchasing agency taking into consideration price and the evaluation factors set forth in the request for proposals. No other factors or criteria may be used in the evaluation. . . .

Because we determine that the agreement between the City and Lien was not one for the procurement of "services," but rather for the lease of municipal property, we do not address Croell's alleged violations of SDCL 5-18A-7.

proceed to authorize the lease upon the terms and conditions it determines.

*Id.*

[¶16.]    In this case the City leased its real property to Lien on numerous "conditions." *See* SDCL 9-12-5.1. The City also complied with the procedural requirements of SDCL 9-12-5.2. The City adopted a resolution declaring its intent to enter into the lease agreement with Lien, it fixed a time and place for a public hearing on the adoption of the resolution, it published a notice of the hearing more than ten days before the hearing, and it authorized the lease by a majority vote during the October 7 hearing.

[¶17.]    Nevertheless, Croell contends that the service procurement requirements in SDCL chapter 5-18A applied. SDCL 5-18A-1(3) limits the application of those requirements to "any type of agreement . . . for the procurement of supplies, services, or construction[.]" SDCL 5-18A-1(28) defines services as "furnishing of labor, time, or effort by a contractor . . . [.]" Croell points out that the lease in this case required Lien to use its "efforts" with respect to certain matters like farming the property and providing other property for sewage sludge disposal. However, these conditions of the lease did not change the contract from a lease of the City's property into a contract for the procurement of services.

[¶18.]    The terms requiring Lien's efforts were all integrally related to the City's historical use of its real property. Additionally, the transaction involved a bona fide lease. The City paid no monetary compensation for Lien's "efforts." Instead, the City was to receive $1,000,000 for leasing the property for sand and gravel extraction, and the City was to receive 100% of the profits from farming the

property. Concededly, Lien also agreed to make property available for the deposit of biosolids if the City needed additional acreage. And there was an alternative agreement to either enter into a separate contract for a land exchange to transfer land to the City if there was a need for additional land for sewage sludge and lagoon expansion or Lien was required to pay the City $150,000. But such conditions were authorized by SDCL 9-12-5.1, and there is no suggestion on this record that the lease was a subterfuge for procuring services. The final contract provided that it "fix[ed] the terms and conditions under which the City agree[d] to lease to [Lien] and [Lien] agree[d] to lease from the City" the property.

[¶19.] Nevertheless, Croell argues that the contract involved the procurement of services because the city utilized the "RFP process," which is referenced in SDCL chapter 5-18A. However, an examination of the RFP does not support Croell's argument. As previously noted, the RFP indicated that the City was leasing land, not procuring services. Option 1 was for the "Lease of Real Property for Agricultural Production." Option 2 contemplated the lease of the property for the purpose of extracting sand and gravel. It specifically noted that the manner of mineral extraction would be coordinated with the "lessee." Option 4 required the proposals to include the amount of the annual payments that would be made to (not by) the City. And Options 1, 2, 4, and 5 indicated that the terms of the "lease" were open for negotiation. Thus, the RFP itself indicated that the City was not seeking to procure services. It was seeking proposals to lease its real property on certain

conditions. Indeed, Croell's own proposal in response to the RFP was for the "lease" of the airport property on various conditions.[5]

[¶20.]    Cities have authority to lease municipal property on conditions pursuant to SDCL 9-12-5.1, and it is undisputed that the City followed the leasing procedures required by SDCL 9-12-5.2. Because the statutory procurement of services requirements do not apply to a bona fide lease of city property, summary judgment was properly granted.

[¶21.]    GILBERTSON, Chief Justice, and SEVERSON and WILBUR, Justices, and KONENKAMP, Retired Justice, concur.

[¶22.]    KERN, Justice, not having been a member of the Court at the time this action was assigned to the Court, did not participate.

---

5.    Croell's reliance on *State, Dep't of Lottery v. Gtech Corp.*, 816 So. 2d 648, 649 (Fla. Dist. Ct. App. 2001), is misplaced. *Gtech* did not involve the lease of real property. It involved proposals to implement and operate a state on-line lottery system. *Id.* at 649. Thus, *Gtech* did not consider the issue in this case: whether the agreement involved a contract to procure services or a lease of a public entity's property.