**Supreme Court**

No. 2014-168-Appeal.
(WC 13-630)

Kayak Centre at Wickford Cove, LLC      :
  d/b/a Kayak Centre of Rhode Island

v.                              :

Town of Narragansett et al.         :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2014-168-Appeal.
(WC 13-630)
(Concurrence and Dissent begins
 on page 10)

Kayak Centre at Wickford Cove, LLC    :
  d/b/a Kayak Centre of Rhode Island

              v.             :

  Town of Narragansett et al.     :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.**  The plaintiff, Kayak Centre at Wickford Cove, LLC

(Kayak Centre), appeals from a final judgment entered in Washington County Superior Court in

favor of the defendants, the town of Narragansett (the town) and Narrow River Kayaks, LLC

(Narrow River).  The action was precipitated because the plaintiff was unsuccessful in winning a

concession contract from the town to operate a paddle sports business on town-owned land.  The

plaintiff's complaint asked for (1) a declaratory judgment that the town had violated sections of

the general laws controlling the award of municipal contracts, G.L. 1956 chapter 55 of title 45,[1]

---

[1]  The particular section in question is G.L. 1956 § 45-55-5, entitled "Competitive sealed
bidding," and it reads in pertinent part:

      "(a) Contracts exceeding [ten thousand dollars ($10,000) for construction
and five thousand dollars ($5,000) for all other purchases] shall be awarded by
competitive bidding unless they are professional engineering/architectural
services * * * and it is determined in writing that this method is not practicable.
      "(b) The invitation for bids shall state whether award shall be made on the
basis of the lowest bid price or the lowest evaluated or responsive bid price.  If the

- 1 -

and (2) injunctive relief against the town to prevent it from rebidding the concession contract. This appeal came before the Supreme Court for argument on March 3, 2015. For the reasons set forth in this opinion, we affirm in part and reverse in part the judgment of the Superior Court.

# I

## Facts and Travel

Kayak Centre is a Rhode Island limited liability company that operates paddle sports businesses at two locations, one in Charlestown and one in the village of Wickford in North Kingstown. Narrow River is also a Rhode Island limited liability company; it owns and operates a paddle sports business at 94 Middlebridge Road in Narragansett (the property). In August 2012, the town acquired a 9.5-acre parcel of land that included the property on which Narrow River's business was located. Narrow River continued to operate its business on the land after the town took ownership of the property. However, in August of 2013, the town invited competitive bidding for a five-year concession contract to operate a paddle sports business on the property. One rationale for the decision was described by Robert O'Neill,[2] the Chairman of the town's Land Conservancy Trust, who said it was "good business sense to say 'We'll see what other proposals [for the paddle sports concession at the Property] people will bring forward.'" To begin the process, the town's purchasing agent, Susan Gallagher, and the Director of the town's Parks and Recreation Department, Steven Wright, prepared a package and advertised the invitation to bid on the concession award.

___

latter basis is used, the objective measurable criteria to be utilized shall be stated in the invitation for bids, if available.

"* * *

"(e) The contract shall be awarded with reasonable promptness by written notice to the responsive and responsible bidder whose bid is either the lowest bid price, or lowest evaluated or responsive bid price."

[2] Mr. O'Neill's name is spelled differently in the various filings in the record; for consistency, we have chosen the spelling used in the Superior Court's decision.

The invitation specified a submission date of August 29, 2013, required that all bidders have a minimum of five years of experience operating a paddle sports business, and asked for references who could attest to prior experience. The invitation also stated, "[the town] reserves the right to reject any/all bids, waive any informalities in the bids received and to accept and award the bid to the highest qualified bid deemed most favorable to the interest of the [t]own." Four bidders initially expressed an interest by attending an advertised pre-bid meeting, but, in the end, only Kayak Centre and Narrow River submitted bids to the town. Bidders were asked to state the amount of a proposed "annual payment" that they would be willing to make to the town. A minimum amount of $15,000 annually was specified in the bid package. Kayak Centre proposed $180,505 in total payments over the projected five-year period, while Narrow River's bid proposed $100,500. In accordance with the invitation to bid, the bids were opened by the town's Parks and Recreation Department and were then examined in order to issue a report to the town council before it awarded the concession.

There is no dispute that Ms. Gallagher's report, according to the parties' stipulated facts, "concluded that the Kayak Centre was the best and most qualified bidder and recommended that the Town Council award the municipal contract to the Kayak Centre."[3] The report stated, in part, "[t]he Parks and Recreation Department is recommending this award based on the Kayak Centre's 18-year experience in the paddle sports business, references[,] and total bid offering." Also, the town's contacts with Kayak Centre's references resulted in "all positive comments regarding the Kayak Centre operation." On October 7, 2013, the report was presented at a meeting of the town council and a motion was made to award the contract to Kayak Centre.

---

[3] The agreed statement of facts filed with the Superior Court also included a transcript of the October 7, 2013, meeting of the Narragansett Town Council, at which the bids of plaintiff and Narrow River were debated, and ultimately rejected.

However, after some lengthy comments from the public and discussion among town councilors, the town council voted three to one to reject the motion to award the concession contract to plaintiff.[4] Following this vote, the town solicitor, who was present at the meeting, then suggested that the next course of action would be "to direct the staff to develop additional criteria and qualifications to be included in a new bid package for [the town council's] review before it goes back out to bid * * * ." The town council, as the parties stipulate, then "voted 3-1 to reject all bids and commence the bidding process again," following the solicitor's recommendation.

On December 3, 2013, Kayak Centre initiated this action by filing a verified complaint consisting of three counts: (1) a request for a declaratory judgment that the town violated § 45-55-5, entitled "Competitive sealed bidding"; (2) an allegation that the town committed a criminal misdemeanor by not complying with that statute; and (3) a prayer for injunctive relief alleging that it would be irreparably harmed if the town was allowed to reject its bid and rebid the concession. On February 10, 2014, the case was heard by a justice of the Superior Court on an agreed statement of facts and documents, including the invitation to bid and the bids that had been submitted by plaintiff and Narrow River. The trial justice considered the parties' submissions and arguments and issued a written decision, which was made effective by a judgment signed March 25, 2014. The trial justice's decision found that the provisions of § 45-55-5 were inapplicable to this particular bidding process and, further, that this Court's standard on competitive bidding, as set forth in Gilbane Building Co. v. Board of Trustees of State Colleges, 107 R.I. 295, 299-300, 267 A.2d 396, 399 (1970), did not apply. Therefore the trial

---

[4] In October 2013, the Narragansett Town Council consisted of five members: James M. Callahan, president of the council; Susan Cicilline-Buonanno, president pro tem; and Glenna M. Hagopian, Matthew M. Mannix, and Douglas E. McLaughlin, as members. On both votes in question only four members voted as Council President Callahan abstained.

justice denied plaintiff's request for declaratory and injunctive relief, and found for defendants on all counts.  The plaintiff filed a timely appeal with this Court.[5]

## II

## Standard of Review

"A decision to grant or deny declaratory or injunctive relief is addressed to the sound discretion of the trial justice and will not be disturbed on appeal unless the record demonstrates a clear abuse of discretion or the trial justice committed an error of law."  Foster Glocester Regional School Building Committee v. Sette, 996 A.2d 1120, 1124 (R.I. 2010) (quoting Hagenberg v. Avedisian, 879 A.2d 436, 441 (R.I. 2005)).  Accordingly, we give great weight to the findings of fact of a trial justice when sitting without a jury in such actions.  Id. (citing Casco Indemnity Co. v. O'Connor, 755 A.2d 779, 782 (R.I. 2000)).  On questions of law, however, our standard is one of de novo review.  Id. (citing Houde v. State, 973 A.2d 493, 498 (R.I. 2009)).  Likewise, in matters of statutory interpretation, our review is also de novo.  State v. Hazard, 68 A.3d 479, 485 (R.I. 2013) (citing Campbell v. State, 56 A.3d 448, 454 (R.I. 2012)).  When construing a statute, this Court will apply a clear and unambiguous statute "literally and [we] must give the words of the statute their plain and ordinary meanings."  Id. (quoting Alessi v. Bowen Court Condominium, 44 A.3d 736, 740 (R.I. 2012)).

## III

## Discussion

On appeal, plaintiff maintains that the trial justice made two errors that warrant reversal. First, plaintiff argues that it was error for the trial justice to rule that the requirements of § 45-55-

---

[5]  While the appeal was pending, the town extended Narrow River's existing lease on the property for a term that ended February 28, 2015.  The status of the land and the concession lease after that date is unclear from the record.

- 5 -

5 were inapplicable to the case before her and, therefore, declaratory relief should not have been denied. Second, plaintiff alleges that it was error for the trial justice to deny it injunctive relief because, it claims, the town's actions were governed by, but violated, the standards of fairness that this Court enunciated in Gilbane. On review, we discern no error in the trial justice's ruling that § 45-55-5 did not apply to the situation before her. It is, however, our opinion that the good faith standard of Gilbane does apply in the absence of a specific statute. In light of that conclusion, findings of fact and conclusions of law are required before this Court can properly address whether the town's actions complied with Gilbane.

### A. Applicability of § 45-55-5

We review the interpretation of a statute de novo and "when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." Raiche v. Scott, 101 A.3d 1244, 1248 (R.I. 2014) (quoting Hazard, 68 A.3d at 485). The language of § 45-55-9 provides that the process for awarding contracts that exceed "ten thousand dollars ($10,000) for construction and five thousand dollars ($5,000) for all other purchases" is to be by competitive bidding. See § 45-55-9 (for the monetary amounts over which § 45-55-5 applies). The statute requires that "[t]he contract shall be awarded * * * to the responsive and responsible bidder whose bid is either the lowest bid price, or lowest evaluated or responsive bid price." Section 45-55-5(e).

The language of the statute is clear and unambiguous. As a result, we need not delve into the intent of the General Assembly, except to say that in our opinion, in enacting § 45-55-5 the Legislature sought to regulate contracts that require the expenditure of public funds. The Legislature was certainly free to include concession contracts within the ambit of § 45-55-5, but it chose not to do so. See Narragansett Food Services, Inc. v. Rhode Island Department of

Labor, 420 A.2d 805, 808 (R.I. 1980) ("The Legislature is presumed to know the state of existing relevant law when it enacts * * * a statute."). In the years since its enactment, we have addressed § 45-55-5 on several occasions. On each occasion, we were faced with a competitive bidding case where the awarding governmental entity selected a more expensive bidder for specified reasons. See, e.g., H.V. Collins Co. v. Tarro, 696 A.2d 298, 300 (R.I. 1997) ("[T]he school committee awarded the contract to Gilbane, the third-lowest bidder. On the following day, Collins, the lowest bidder, commenced this action against the town."). We have said that § 45-55-5 "does not preclude an awarding authority from taking into account factors beyond price." H.V. Collins Co., 696 A.2d at 303. The Court reasoned this to be allowable because, for example, choosing a seemingly higher initial bid from a more qualified party can lessen the risk of future unexpected expenses, fulfilling the "purpose of chapter [55] of title [45] in safeguarding public funds." H.V. Collins Co., 696 A.2d at 303.

However, we note that § 45-55-9 explicitly provides that the contracts to which § 45-55-5 applies are "procurements" and "purchases." The Kayak Centre submitted a bid for the concession contract at issue in this case that would have had Kayak paying the town the sum of $180,505 in payments over the projected five-year period, while Narrow River's bid proposed $100,500 in payments. Not all of the same considerations are at play in a concession contract as are in one for expenditures. We cannot rewrite the statute by essentially exchanging the word lowest for the word highest, as plaintiff would have us do, because we will not insert words into an unambiguous statute. See Raiche, 101 A.3d at 1248. We simply apply the words as written and the words of § 45-55-5 make it clear the statute is inapplicable to these facts. Id. In our opinion, there was no error when the trial justice refused to apply the statute to the town's action, and we therefore affirm the denial of plaintiff's request for declaratory relief.

- 7 -

**B. Standards for Conduct in Concession Bidding**

As noted above, the General Assembly is presumed to know the existing state of the law. Narragansett Food Services, Inc., 420 A.2d at 808. Before the competitive bidding statute was enacted by the Legislature, there was already a standard that was used by this Court when it reviewed bid disputes. In a case involving competitive bidding for a state-issued construction contract before § 45-55-5 was enacted, we observed that, "[i]n the absence of any legislative requirement pertaining to competitive bidding, it is the duty of the appropriate public officials to act honestly and in good faith as they determine which bidder would best serve the public interest." Gilbane, 107 R.I. at 299-300, 267 A.2d at 399. There can be no dispute that this standard results in a certain amount of deference to government officials; indeed, we have held that this Court "will not interfere with [an] award absent a showing that the board acted corruptly or in bad faith, or so unreasonably or arbitrarily as to be guilty of a palpable abuse of discretion." Paul Goldman, Inc. v. Burns, 109 R.I. 236, 239, 283 A.2d 673, 676 (1971) (citing Gilbane, 107 R.I. at 300, 267 A.2d at 399). Thus, although § 45-55-5 does not apply to competitive bidding processes involving concession contracts, which are contracts that produce revenue and not purchases, we conclude that, even in the absence of an applicable statute, the Gilbane standard must still apply.

The defendants argue that this Court has not been presented with a reviewable issue because the town never completed the bidding process and never awarded the concession to any bidder. The defendants argue that because no such award exists, the propriety of the town's conduct is unreachable by our review. We do not agree. We do not tread new ground in opining on the process of awarding, or not awarding, a competitive bid. See National Car Rental System, Inc. v. Fazzano, 112 R.I. 56, 58, 307 A.2d 770, 771 (1973) (car rental company brought action to

enjoin the awarding of a concession contract). In <u>National</u>, the Director of Transportation and the state's purchasing agent advertised a bid to award three car rental concessions at T. F. Green Airport in Warwick. <u>National</u>, 112 R.I. at 57-58, 307 A.2d at 771. The bid stated that one of the three concessions was reserved for a "Rhode Island car rental company," a condition to which National Car Rental, a national car rental company, objected. <u>Id.</u> at 58, 307 A.2d at 771. This Court reviewed and opined on the bidding process, despite the fact that National Car Rental brought the action during the time allotted for bid submission. <u>Id.</u> at 58-60, 307 A.2d at 771-73. In fact, the action in that case was brought on the day before bids were scheduled to be opened, when no award had been made. <u>Id.</u> at 58, 307 A.2d at 771. In our opinion, this case is in a proper posture for our review.

As noted above, in her written decision the trial justice decided that the <u>Gilbane</u> standard did not apply and consequently she did not address whether the town acted "corruptly or in bad faith, or so unreasonably or so arbitrarily as to be guilty of a palpable abuse of discretion." <u>Gilbane</u>, 107 R.I. at 399, 267 A.2d at 300 (citing <u>Slocum v. City of Medford</u>, 18 N.E.2d 1013, 1015 (Mass. 1939)). Because we disagree with the trial justice's determination as to the applicability of the <u>Gilbane</u> standard, it follows that the case must be remanded to the trial justice for findings of fact and conclusions of law on that issue.[6]

---

[6] In remanding this case we remain cognizant of our earlier holdings that the bar for a potential challenger is extremely high. Corruption, bad faith, and a palpable abuse of discretion are difficult to prove, particularly in the light of our antipathy for "government by injunction." <u>See, e.g.</u>, <u>Truk Away of Rhode Island, Inc. v. Macera Brothers of Cranston, Inc.</u>, 643 A.2d 811, 816 (R.I. 1994).

**IV**

**Conclusion**

For the reasons set forth above, we affirm in part and reverse in part the decision of the Superior Court, vacate the judgment, and remand the case for findings of fact and conclusions of law. The papers may be returned to the Superior Court.


**Justice Goldberg, concurring in part and dissenting in part**. I concur with the opinion of the majority to the extent it holds that the good-faith standard of Gilbane Building Co. v. Board of Trustees of State Colleges, 107 R.I. 295, 299-300, 267 A.2d 396, 399 (1970) applies and necessitates the remand of this case in order for the trial justice to make a determination as to whether the town "acted corruptly or in bad faith, or so unreasonably or so arbitrarily as to be guilty of a palpable abuse of discretion." Id. at 300, 267 A.2d at 399.[1] However, I must disassociate myself from the majority's conclusion that G.L. 1956 § 45-55-5 did not apply to the actions of the town council. Rather, I am of the opinion that state law governing the award of municipal contracts as set forth in chapter 55 of title 45, including § 45-55-5 applies to the contract in this case. Therefore, I cannot join a decision that allows awarding authorities to circumvent the safeguards of Rhode Island's bidding statutes and the state's well-settled principles of competitive sealed bidding for leases and grants of public property and facilities.

---

[1] I note that the majority signals that the "bar for a potential challenger" under the Gilbane standard "is extremely high." However, the singular question is "whether the [town] exercised 'sound discretion' in rejecting" Kayak Centre's bid. See Coastal Recycling, Inc. v. Connors, 854 A.2d 711, 715 (R.I. 2004) (citing Gilbane Building Co. v. Board of Trustees of State Colleges, 107 R.I. 295, 302, 267 A.2d 396, 400 (1970)). Reasons that underlie the town council's decision to reject the bid certainly warrant a detailed review by the trial justice to determine whether the town exercised the good faith and sound discretion that Gilbane commands.

- 10 -

**Application of § 45-55-5**

While I note that the majority's interpretation of chapter 55 of title 45 is a plausible reading of the statute, I conclude that the statute is susceptible to another plausible reading, thus rendering the statute ambiguous; as such, it is incumbent upon this Court to engage in our traditional statutory analysis in order to give effect to the intention of the Legislature. See Town of Burrillville v. Pascoag Apartment Associates, LLC, 950 A.2d 435, 445 (R.I. 2008) ("[W]hen a statute is susceptible of more than one meaning, we employ our well-established maxims of statutory construction in an effort to glean the intent of the Legislature." quoting Unistrut Corp. v. State Department of Labor and Training, 922 A.2d 93, 98-99 (R.I. 2007)).

Rather than interpreting chapter 55 of title 45 of the General Laws as a "harmonious whole[,]" the majority's review begins and ends with a single section, § 45-55-5. See Zambarano v. Retirement Board of Employees' Retirement System of Rhode Island, 61 A.3d 432, 436 (R.I. 2013) ("[W]hen interpreting statutes, a court should construe 'each part or section * * * in connection with every other part or section to produce a harmonious whole.'" quoting 2A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutes and Statutory Construction § 46:5 at 204 (7th ed. 2014)). The majority opinion thus fails to consider the remaining sections of chapter 55 of title 45. In construing all sections of the statute, it is apparent that the statute is ambiguous. Specifically, § 45-55-1 "declare[s] that a need exists to establish a uniform system for the award of contracts by municipalities, utilizing open cooperative bids." (Emphasis added.) It is clear, therefore, that the Legislature sought to provide a system of general applicability that requires the use of "open cooperative bids[,]" when awarding municipal contracts, and not a bifurcated system depending on whether the municipality is expending funds or leasing its properties for revenue. Section 45-55-2(1) provides that "[e]xcept as otherwise authorized by

- 11 -

law, all municipal contracts shall be awarded by * * * [c]ompetitive sealed bidding, pursuant to § 45-55-5[.]" (Emphasis added.) The term "contract" is broadly defined as:

> "all types of agreements, including grants and orders, for the purchase or disposal of supplies, services, construction, or any other item. It includes awards; contracts of a fixed-price, cost, cost-plus-a-fixed-fee, or incentive type; contracts providing for the issuance of job or task orders; leases; letter contracts, purchase orders, and construction management contracts. It also includes supplemental agreements with respect to any of the preceding. 'Contract' does not include labor contracts with employees of the municipality." Section 45-55-4(4) (emphases added).

Additionally, § 45-55-4(14) defines "[p]rocurement" as:

> "the purchasing, buying, renting, leasing, or otherwise obtaining of any supplies, services, or construction. It also includes all functions that pertain to the obtaining of any supply, service, or construction item, including description of requirements, selection and solicitation of sources, preparation and award of contract, and all phases of contract administration." (Emphases added.)

The bid proposal in this case—the grant of a franchise or concession on town-owned property— does not fall within any statutory exclusion, and therefore, at the very least, falls within the purview of the broad definition of "procurement" as the town was seeking to engage a company to operate a kayaking business on its property, including a lease of that property.

Next, § 45-55-5 requires that contracts "exceeding the amount provided by § 45-55-9 shall be awarded by competitive bidding."[2] The contract at issue here sought to generate more than one hundred thousand dollars in revenue for the town and, thus, exceeds the amount

---

[2] General Laws 1956 § 45-55-9, entitled "Small purchases[,]" exempts two limited procurements from its purview. "Procurements, not to exceed an aggregate amount of ten thousand dollars ($10,000) for construction and five thousand dollars ($5,000) for all other purchases may be made in accordance with small purchase regulations promulgated by the municipality."

provided by § 45-55-9.[3] Given the mandate of § 45-55-2(1), that "<u>all</u> municipal contracts shall be awarded by * * * [c]ompetitive sealed bidding," this reading is a plausible reading of the statute, and furthers the declared intent of the Legislature.[4] (Emphasis added.)

This Court previously has held that "the purpose of chapter [55] of title [45] [is the] safeguarding [of] public funds." <u>H.V. Collins Co. v. Tarro</u>, 696 A.2d 298, 303 (R.I. 1997). Therefore, given that the provisions of this chapter are susceptible to more than one plausible reading, the legislative intent of the statute is enormously relevant. The majority's position however, fails to consider the legislative intent and holds that, because § 45-55-5 does not specifically mention concession contracts, the public funds generated through such contracts are not entitled to the safeguards provided in the statute. In my opinion, this decision will turn municipal competitive bidding in Rhode Island on its head.

**Conclusion**

In conclusion, it is my opinion that by immunizing municipal concession and lease contracts from the requirement of state law and competitive bidding, the majority embarks upon dangerous waters and relieves public officials from the requirements of this state's longstanding statutory framework governing public contracts. Consequently, I concur in part and respectfully dissent in part.

---

[3] Section 45-55-4(14) begins with the general term "[p]rocurement," and then it delineates the specific types of procurements that may be made through small purchase regulations. However, it does not exclude any other procurements, such as "buying, renting, leasing, or otherwise obtaining of any supplies [or] services[,]" that are subject to the provisions of § 45-55-9.
[4] Furthermore, as evidenced in the record, the town solicitor expressed his belief that the town was governed by the state's competitive bidding statutes.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**      Kayak Centre at Wickford Cove, LLC d/b/a Kayak Centre of
Rhode Island v. Town of Narragansett et al.

**CASE NO:**      No. 2014-168-Appeal.
(WC 13-630)

**COURT:**      Supreme Court

**DATE OPINION FILED:**  June 15, 2015

**JUSTICES:**      Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**      Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:**   Washington County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Kristin E. Rodgers

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Robert Clark Corrente, Esq.

For Defendants:  Mark A. McSally, Esq.

Angelo R. Simone, Esq.