**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2017-NMCA-009

Filing Date: September 27, 2016

Docket No. 34,486

MIRA CONSULTING, INC., a
New Mexico Corporation,

       Plaintiff-Appellant,

v.

BOARD OF EDUCATION,
ALBUQUERQUE PUBLIC SCHOOLS,

       Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
Nancy J. Franchini, District Judge

Bingham, Hurst & Apodaca, P.C.
Wayne E. Bingham
Albuquerque, NM

for Appellant

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Arthur D. Melendres
Zachary L. McCormick
Albuquerque, NM

for Appellee

## OPINION

**BUSTAMANTE, Judge.**

**{1}** Mira Consulting, Inc. appeals the dismissal of its complaint for declaratory judgment. We agree with the district court that New Mexico's Procurement Code does not apply here and that dismissal under Rule 1-012(B)(6) NMRA was appropriate. We therefore affirm.

1

**BACKGROUND**

**{2}** Mira Consulting, Inc. (Mira) is a for-profit New Mexico corporation providing dental services primarily in Albuquerque. Albuquerque Public Schools (APS) issued a "Request for Information" (RFI) soliciting information about "dental health providers who are interested [in] delivering direct services in APS for the 2014-2015 [s]chool [y]ear." Through the program, successful applicants would be permitted to provide dental services in APS schools. The RFI stated that "[a]ll services performed per an award for this RFI must be performed at no cost to APS. Successful applicants will be directed to bill Medicaid, other third party payers or provide services pro[]bono."

**{3}** Mira responded to the RFI. Three other dental service providers also submitted information. After four reviewers scored each response, Mira and Smiles for New Mexico Kids were selected as providers. Although Mira was "awarded" sixty-eight schools and Smiles for New Mexico Kids was awarded thirty schools, Mira filed a bid protest with APS's procurement division pursuant to Section 13-1-172 of New Mexico's Procurement Code, NMSA 1978, §§ 13-1-28 to -199 (1984, as amended through 2015). The bid protest was based in part on the distribution of elementary schools and high schools between Mira and Smiles for New Mexico Kids, as well as proximity of the schools to each company's "dental home." APS responded to the bid protest by stating that the protest procedures in the Procurement Code were inapplicable because the Procurement Code does not apply to transactions in which APS does not expend any funds.

**{4}** Mira then filed a complaint for declaratory judgment requesting an order declaring that the RFI was subject to the Procurement Code. After a hearing on a motion to dismiss, the district court agreed with APS that the Procurement Code did not apply and dismissed the complaint for failure to state a claim under Rule 1-012(B)(6). Mira appeals.

**DISCUSSION**

**{5}** Our review of statutory construction questions is de novo. *See Pub. Serv. Co. of N.M. v. N.M. Pub. Util. Comm'n*, 1999-NMSC-040, ¶ 14, 128 N.M. 309, 992 P.2d 860. In construing a statute, we seek to "determine and give effect to the intent of the [L]egislature." *Id.* ¶ 18 (internal quotation marks and citation omitted). We are guided by common principles of statutory construction, including the following:

> [(1)] The plain language of a statute is the primary indicator of legislative intent.

> [(2)] Courts are to give the words used in the statute their ordinary meaning unless the [L]egislature indicates a different intent.

> [(3)] The court will not read into a statute or ordinance language which is not there, particularly if it makes sense as written.

*Id.* (alteration, internal quotation marks, and citations omitted).

**{6}** Although the "plain meaning rule" is a guiding principle, "[i]ts beguiling simplicity may mask a host of reasons why a statute, apparently clear and unambiguous on its face, may for one reason or another give rise to legitimate (i.e., nonfrivolous) differences of opinion concerning the statute's meaning." *State v. Smith*, 2004-NMSC-032, ¶ 9, 136 N.M. 372, 98 P.3d 1022 (internal quotation marks and citation omitted). Therefore, "[t]he plain meaning rule must yield on occasion to an intention otherwise discerned in terms of equity, legislative history, or other sources." *Id.* (internal quotation marks and citation omitted).

**{7}** Section 13-1-30(A) addresses the applicability of the Procurement Code. It provides that "[e]xcept as otherwise provided in the Procurement Code, that code shall apply to every expenditure by state agencies and local public bodies for the procurement of items of tangible personal property, services[,] and construction." An "expenditure" is "[t]he act or process of spending or using money, time, energy, etc.; esp., the disbursement of funds . . . [or a] sum paid out." *Black's Law Dictionary* 698 (10th ed. 2014). Mira argues that, although the Procurement Code clearly applies to "every expenditure," nothing in Section 13-1-30 indicates that it applies *only* when there is an expenditure. But this argument ignores the second sentence of Section 13-1-30(A), which states that the Procurement Code "*also applies to concession contracts* at the New Mexico state fair in excess of twenty thousand dollars ($20,000), whether those concession contracts generate revenue and earnings or expand [sic] funds." (Emphasis added.) A "concession" contract is "[a] government grant for specific privileges." *Black's Law Dictionary* 350; *see* 19.5.1.7(J) NMAC ("'Concession contract' means an agreement between the department and a person, or business entity, which allows the concessionaire to provide services, merchandise, accommodations[,] or facilities within a park."). Although the parties do not describe it this way, the arrangement at issue here falls within this definition.

**{8}** We conclude that the Procurement Code does not apply here for two reasons. First, concession contracts typically do not involve expenditures by the public entity. *See* John Ziegler, *The Dangers of Municipal Concession Contracts: A New Vehicle to Improve Accountability and Transparency*, 40 Pub. Cont. L.J. 571, 575 (2011) (discussing basic concession contracts); *see also Kayak Ctr. at Wickford Cove, LLC v. Town of Narragansett*, 116 A.3d 250, 255 (R.I. 2015) (describing concession contracts as "contracts that produce revenue and not purchases"). Second, we interpret the second sentence of Section 13-1-30(A) as a narrow exception to the expenditure requirement in the first sentence. Phrased another way, this provision means that the only time a transaction not involving an expenditure is covered by the Procurement Code is when it is a concession contract at the New Mexico state fair for over $20,000. Furthermore, under the principle of *inclusio unius est exclusio alterius*, the inclusion of state fair concession contracts over $20,000 in the statute also acts as an exclusion of omitted alternatives—being concession contracts of other kinds. *City of Santa Rosa v. Jaramillo*, 1973-NMSC-119, ¶ 11, 85 N.M. 747, 517 P.2d 69 (stating that *inclusio unius est exclusio alterius* "means the inclusion of one thing is the exclusion of the other"). When the first sentence is read in the context of the second, there

3

is a clear implication that non-state fair concession contracts are not covered by the Procurement Code. We conclude that the Procurement Code does not apply to APS's RFI or Mira's response to it.

**{9}**     Other courts have held under similar circumstances that concession contracts are excluded from the ambit of their states' procurement codes. In *Kayak Centre*, the Rhode Island Supreme Court considered a request for declaratory judgment similar to that here. 116 A.3d at 252-53. The plaintiff argued that the defendant had violated a procurement statute when it did not award a concession contract to the plaintiff, who proposed a higher payment to the defendant than its competitors. *Id.* In addition to requiring competitive sealed bidding, the statute at issue provided that "[t]he contract shall be awarded with reasonable promptness by written notice to the responsive and responsible bidder whose bid is either the lowest bid price, or lowest evaluated or responsive bid price." R.I. Gen. Laws § 45-55-5(e) (1998). Relying on this language and references to "purchases" and "procurement" in the statute, the *Kayak Centre* court held that "[t]he language of the statute is clear and unambiguous. As a result, we need not delve into the intent of the [g]eneral [a]ssembly, except to say that in our opinion, in enacting [Section] 45-55-5 the [l]egislature sought to regulate contracts that require the expenditure of public funds." *Kayak Ctr.*, 116 A.3d at 254. The court held that the procurement statute did not apply, stating, "We cannot rewrite the statute by essentially exchanging the word lowest for the word highest, as [the] plaintiff would have us do, because we will not insert words into an unambiguous statute." *Id.*; *see Indep. Taxicab Ass'n of Columbus v. Columbus Green Cabs, Inc.*, 616 N.E.2d 1144, 1149 (Ohio Ct. App. 1992) (holding that, where the plaintiff sought to provide taxi management services at the airport, because "the [defendant-]city is not purchasing services from [the winning contractor, it] was not required to comply with the competitive bidding procedures set forth in [the defendant-city's procurement code]"); *see also* 10 McQuillin Mun. Corp., *Contracts in General* § 29:38 (3d ed.) ("Where a city is not purchasing services but granting a license or franchise to do business, it is not required to comply with a competitive bidding ordinance.").

**{10}**     We briefly address Mira's arguments that the plain language of Section 13-1-30 is not dispositive. To the extent Mira argues that because APS's RFI resembled and functioned like a Request for Proposals (RFP), it should be treated like an RFP under the Procurement Code, we disagree for two reasons. *See* § 13-1-112 (governing requests for proposals). First, APS's decision to use methods for soliciting and evaluating dental service providers that resembled those for RFPs does not transform a non-covered transaction into a covered one, or vice versa. If the methods chosen determined whether the Procurement Code applied, then Section 13-1-30(A) would be superfluous. Moreover, public entities could avoid the Procurement Code's requirements simply by not following its RFP procedures. Second, the RFI made clear that APS was not offering to buy services from respondents to the RFI. Instead, it stated several times that the selected vendors must bill third parties for payment. *Cf. Lowe v. City of Hot Springs*, 2015 SD 3, ¶ 19, 859 N.W.2d 612 (rejecting an argument that, because the defendant "utilized the RFP process," the solicitation was for procurement of services on the ground that "the RFP itself indicated that the [defendant] was not seeking to procure services" (internal quotation marks omitted)).

4

**{11}** Mira also relies on *Memorial Medical Center, Inc. v. Tatsch Construction, Inc.*, to argue that the Procurement Code applies. 2000-NMSC-030, 129 N.M. 677, 12 P.3d 431. In *Memorial Medical Center*, the issue was whether a private entity (MMCI) could be considered a "political subdivision" or "local public body" by virtue of its relationship with the public entities (the City of Las Cruces and County of Doña Ana) that leased MMCI the hospital facility. *Id.* ¶¶ 1-2 (internal quotation marks omitted). The issue in *Memorial Medical Center* was not whether the Procurement Code would apply to a new construction project entered into by the City or the County, as public entities. *Id.* ¶ 1. It was fully understood that the Procurement Code would apply to the new hospital construction project if the City or County had continued to own and operate the hospital. *Id.* ¶¶ 4, 20-36. More specifically, the question was whether the Procurement Code and related statutes should also apply to MMCI, a private entity, "because the private entity has so many public attributes, is so controlled and conducted, or otherwise is so affiliated with a public entity that as a matter of fairness it must be considered as the same entity." *Id.* ¶ 34.

**{12}** In the present case, we understand Mira's argument to be that, because it was so intertwined with a public entity (APS) in offering to provide dental services to APS schools, the Procurement Code must apply to the RFI selection process for providing these services. We are not persuaded by Mira's argument. Mira is not stepping in as a private entity to pay for dental services on behalf of APS, as its alter ego or otherwise. *Id.* ¶ 35. Mira does not dispute that these dental services will be paid by Medicaid, other third party payers, or provided pro bono to students. Mira did not assert that the third party payers and Medicaid are acting as an alter ego for APS. Unlike the new hospital construction project in *Memorial Medical Center*, Mira is not acting to procure and pay a third party for providing dental services. Neither APS nor Mira pay third parties to provide dental services to APS students. Mira is simply applying to be one of the third party providers of the dental service. No private entity acting as the "alter ego" for APS has been established. The alter ego theory offered under *Memorial Medical Center* is inapplicable to Mira, and the Procurement Code will not be altered or expanded to apply to the RFI under these factual circumstances.

**{13}** Finally, although Mira makes several policy arguments for why concession contracts should be subject to the Procurement Code, such issues call for "legislative therapy and not judicial surgery." *State v. Gardner*, 1991-NMCA-058, ¶ 9, 112 N.M. 280, 814 P.2d 458 (internal quotation marks and citation omitted). "Unless a statute violates the Constitution, we will not question the wisdom, policy, or justness of legislation enacted by our Legislature." *Aeda v. Aeda*, 2013-NMCA-095, ¶ 11, 310 P.3d 646 (alteration, internal quotation marks, and citation omitted). The Legislature could have made all concession contracts subject to the Procurement Code. *See State v. Greenwood*, 2012-NMCA-017, ¶ 38, 271 P.3d 753 ("The Legislature knows how to include language in a statute if it so desires." (alteration, internal quotation marks, and citation omitted)); *cf.* Albuquerque, N.M., Code of Ordinances § 5-5-28(A) (2011) (distinguishing between "purchases" and "concession contracts" and stating that "[a]ll purchases of goods, services, and construction in excess of $25,000, and the establishment of concession contracts expected to exceed $75,000 in

revenues to the contractor shall be made by competitive sealed bid except as otherwise authorized by this article."). Our Legislature chose not to do so, and we must honor that choice. *Jones v. Holiday Inn Express*, 2014-NMCA-082, ¶ 19, 331 P.3d 992 ("Courts must construe statutes as they find them and may not amend or change them under the guise of construction." (internal quotation marks and citation omitted)).

**CONCLUSION**

**{14}**    We conclude that the Procurement Code does not apply to contracts such as that contemplated by APS's RFI. Hence, we affirm the district court's dismissal of Mira's complaint for declaratory judgment.

**{15}    IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

6